EZELL STEPP v. THE STATE.

No. 6879. Decided June 14, 1922.

Rehearing Denied October 11, 1922.

1.—Murder—Accomplice—Corroboration—Rule Stated—Sufficiency of the Evidence.

The test of the sufficiency of the evidence to corroborate an accomplice is, does such evidence in and of itself tend to connect the accused with the commission of the offense, and applying this test to the instant case, the corroborating testimony is sufficient to sustain the conviction.

2.—Same—Charge of Court—Alibi—Imputing Crime to Another—Charge of Court.

While there appeared some suggestion in the cross-examination of the accomplice indicating an idea that deceased was killed by him, which the

witness vigorously denied, but there was no evidence of an alibi, nor any facts which inferentially raised that issue, there was no error in refusing the submitted charge on alibi; besides, there was a positive confession that defendant killed deceased.

### 3.—Same—Change of Venue—Practice in Trial Court.

Where the State controverted defendant's application for a change of venue, both as to the fact of the existence of prejudice, and as to the means of knowledge of the compurgators, and the trial court after hearing the evidence pro and con upon the issue thus made, overruled the motion for a change of venue, there was no reversible error.

### 4.—Same—Sufficiency of the Evidence—Representation by Counsel.

Where, upon trial of murder, the evidence was sufficient to sustain the conviction, and the defendant was represented by eminent counsel, who made every legal effort in his defense, the judgment below must be affirmed.

### 5.—Same—Rehearing—Corroboration—Accomplice—Alibi—Charge of Court.

Where, upon motion for rehearing, this court, after reviewing the record, is constrained to re-assert its conclusion that the evidence of the accomplice was sufficiently corroborated by other evidence to meet the measure of the law which requires that the evidence, aside from that of the accomplice, tend to connect the accused with the commission of the offense, and that the theory of alibi was not sustained by the evidence sufficiently to warrant the charge thereon.

Appeal from the District Court of Collin. Tried below before the Honorable F. E. Wilcox.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*J. E. Abernathy* and *Martin Kindle,* and *John D. Reese,* for appellant.—On question of others committing crime: DuBose v. State, 10 Texas Crim. App., 230; Wheeler v. State, 121 S. W. Rep., 166; Cline v. State, 178 id., 520.

On question of alibi:—Conway v. State, 26 id., 401; Balentine v. State, 107 id., 546.

*R. G. Storey,* Assistant Attorney General, *A. M. Wolford,* County Attorney, *H. Grady Chandler,* Assistant County Attorney, and *Truett & Neathery,* for the State.—On question of change of venue: Tubb v. State, 117 S. W. 868; Watson v. State, 205 id., 662; Martin v. State, 21 Texas Crim. App., 10.

On question of alibi:—Milton v. State, 158 S. W. Rep., 556; Orange v. State, 173 id., 297; and cases cited in opinion.

LATTIMORE, Judge.—Appellant was convicted of murder in the District Court of Collin County, and his punishment fixed at death.

That Hardy Mills was murdered in Collin County on Friday, September 2, 1921, is beyond dispute. Who killed him? The State asserted that appellant did it. The jury have so found from the facts submitted to them. Mills, with his wife and children, lived on appellant's farm about three and one half miles northwest of McKinney. He worked in town and walked to his work. Just at sunrise on said Friday, carrying his lunch wrapped in a newspaper, he left home going toward town. His route lay past the home and farm of appellant. Two weeks later his body was found in an old well some miles west from his home. The head was wrapped in an auto top cover held in place by baling wire. Between the legs of the body was a heavy piece of railroad iron also wrapped around with wire. Over the left ear was a gaping wound, and in the front of the body, a hole. Appellant was arrested as was his nephew, Arlye Stepp, the day the body was found. The nephew Arlye was used as a State witness and testified that appellant told him that he killed deceased by striking him on the head with an eye hoe, and stabbing him with a knife. Arlye also testified that at the request of appellant he had aided in the secreting of the body of deceased in said well. By Article 86 of our Penal Code any person aiding another to evade the consequences of a crime committed, is made an accessory. All accessories who become witnesses are accomplices. Arlye Stepp was an accessory and his evidence that of an accomplice. His testimony removed the case from the domain of circumstantial evidence, and the court did not err in refusing to charge the law applicable to a case dependent upon such evidence. Was Arlye Stepp corroborated as the law requires that an accomplice be? He stayed at appellant's house Thursday night and left same Friday morning. He lived three and one half miles southeast from McKinney, about seven miles from the home of appellant. His story was that appellant came to his home that Friday afternoon and asked him to come over in his car that night. Mose Lowder corroborates Arlye Stepp by saying that appellant came over to Arlye's home that Friday afternoon, and also by saying that he and Arlye went on Friday night in Arlye's car to appellant's home. After supper that night appellant and Arlye left the house together. Witness Blackman swore that after supper, he, Mose Lowder and one Phelps went to the well for water and when they got back appellant and Arlye had gone. This witness also said that appellant and Arlye came back about one o'clock that night and stopped the car near the end of the house, both of them being seen by witness when they came into the house at that time. Arlye testified that on this night he helped appellant take the body of deceased and prepare same and put it in the well where it was found, and that while on this mission with appellant he was told by the latter the story of the killing. He said that appellant told him that on that morning, after witness left to go to his house, he, appellant, and a Mr. Armstrong went out to the barn to feed and that appellant slipped off

from Armstrong, went out into his corn field south of his barn and down to the road, and in a minute or two after he reached the road deceased came along, and that appellant invited him to come through his corn and look at a certain cotton patch, and that as they walked through the corn he accused deceased of trying to send him to the pen, and when deceased denied it he knocked deceased in the head with an eye hoe and stuck his knife in his heart; that later on in the day he went back to the body and found that the flies were blowing it, and wrapped the head in an auto top cover and placed a sack over the body; that the body was about thirty corn rows from the road; that after taking the body out to the car of witness they placed same on the running board of the car and went by appellant's house, and that he went into the yard and brought back the piece of railroad iron which later they fastened between the legs of deceased with baling wire.

Appellant's wife was a witness in his behalf. She testified that on the fatal Friday morning she and appellant ate breakfast a little before daylight, and that appellant left her and went out to the barn to feed the stock. According to her testimony it was some forty minutes afterward before she saw him again. This was her estimate of the length of time, and experience would not lead us to believe that a wife testifying for her husband would shorten her estimate in so material a matter. Where appellant was during that forty minutes is shown by no other witness. He did not take the stand. Mr. Armstrong was not called to testify. It was shown by an almanac that the sun rose on September 2, 1921, at 5:30 A. M. Mr. Blackman testified that he went to appellant's home that Friday morning about 6:30. Mrs. Stepp was in the cow lot milking. About thirty minutes after witness arrived he saw appellant coming through the horse lot south of the barn. The sun was well up and shining at that time. South of appellant's barn was the corn field extending to the public road. This witness identified a pair of trousers worn by appellant on the Friday morning in question. A chemist testified that said trousers had stains on them which upon analysis proved to be blood. This chemist also testified that he analyzed spots found in the back end of of Arlye Stepp's car, and near the place where the hand would rest on the right front end of the car, and these were also found to be blood. The piece of railroad iron found between the legs of the corpse, was shown to be the same or exactly like one which had been lying in the yard of appellant prior to the alleged homicide, but which had disappeared from said place. It was shown that appellant owned an eye hoe which had been seen at his place about a week before the homicide but which could not be found afterward. Mrs. Mills, wife of deceased, testified that some time during the summer preceding the killing in September, appellant came to her and told her that her husband was talking too much and that he was likely to disappear; that one of deceased's best friends had told him that de-

ceased was going to be killed. When pressed by witness for the name of said best friend appellant said it was John Klepper. Incidentally Mr. Klepper was placed on the stand by the State during the trial and denied ever having made any such statement to appellant. Mrs. Mills also testified that about three weeks before her husband disappeared appellant came to her and told her that her husband was fixing to leave the country with a woman in McKinney; that he cared more for said woman than he did for witness, and that either he would leave first and the woman would come to him or the woman would leave and he would go to the woman. County attorney Wolford testified that on Saturday, the day after the disappearance of Mills, appellant came to his office in McKinney and told him that Mills would make a good State witness in a case which was coming up the following Monday. Witness said the appellant had never tendered him any assistance in any way before. Harry White swore that after the body of deceased was found he examined appellant's corn field and about the twenty-eighth row from the road he found a piece of pantasote out of which automobile top covers were made. It was also shown that after the disappearance of Mills and before his body was found, there had been a heavy rain. Mr. White further testified that the corn field of appellant up to about the thirty-first row from the road showed that a wagon or wagons had been driven up and down the rows from end to end and back.

The test of the sufficiency of the evidence to corroborate an accomplice is, does such evidence in and of itself tend to connect the accused with the commission of the offense. Applying this test to the instant case, we are confronted with the strong fact that when found deceased's body was weighted down with a piece of iron last seen in appellant's yard; that deceased had mysteriously disappeared after sunrise Friday morning; that appellant had twice told the wife of deceased that he would disappear,—that he would be killed. Deceased was killed. The wounds in the head and body of deceased might easily have been made by an eye hoe and a knife. The trousers worn by appellant on the morning of the alleged killing had blood on them. The day after deceased was killed by some one, appellant appeared at the county attorney's office suggesting that deceased would make the State a good witness in some case. That appellant was out in the corn field in which Arlye Stepp claimed the said killing took place, and at about the time took place, seems almost without dispute. Even when viewed in the light of the testimony of his own wife, but specially when looked at from the standpoint of the testimony of Mr. Blackman, appellant was some where out south of his barn and in that corn field from a time between daylight and sun up until about 6:30 which, according to the almanac, would be when the sun was quite or nearly an hour high. No one offers any sort of explanation of where he was or what he was doing. His eye hoe could not be found. For some reason in the early part

of September the corn field where the killing is supposed to have taken place was trampled and driven over. We cannot give our assent to the proposition that there are no facts or circumstances in evidence tending to connect appellant with said killing or that the testimony of Arlye Stepp is without corroboration.

There appears some suggestions in the cross-examination of Arlye Stepp indicating an idea that deceased was killed by Aryle. The witness vigorously denied any knowledge of or connection with such killing. In discussing this matter, we notice an exception to the court's charge for not affirmatively presenting "the defendant's defense," also a requested charge on alibi, and also requested charges which in effect sought to have the jury told that even though they believed that appellant aided in putting away the body of deceased, he could not be convicted herein unless he killed deceased, or was present and participating in such killing. It is plain that Hardy Mills was killed after sunrise. His wife testified, and nothing in the record suggests otherwise, that he left home alive and well at sunrise. It was a quarter of a mile from his home to where he came to the road leading by appellant's field. Arlye Stepp testified that he left the house of appellant on that morning and got to McKinney, three miles away, before daylight. Appellant's wife upon cross-examination, being asked relative to what time Arlye Stepp left her house that morning, swore that she did not see him leave but that she heard his car start a little before daylight. Three women living in McKinney corroborated Arlye Stepp in his statement that he came to their houses that morning and got them for the purpose of carrying them to his place in his car, and that he came to each and all of their houses before sunrise. They also said that he carried them in his car to his farm three and one half miles southeast from McKinney and left them at his cotton field. Mose Lowder and Mrs. John Stepp, mother of Aryle, corroborated the latter in the statement that he ate breakfast at his home about sun up, and that he was around the place all that day.

We find nothing in the record upon which to base a charge on alibi, or to seriously support any proposition or theory that deceased was killed by any one other than appellant. No witnesses testified in express terms to appellant's presence at any other or different place from that of the killing, nor to any facts which inferentially raise the issue. There was testimony from several witnesses who were of opinion that they had seen deceased alive and well at different points on the road to McKinney between that town and the home of appellant on the morning of his disappearance, but the testimony of each of these witnesses is so given and so easily the subject of mistake as to the day, as to not raise any serious doubt in the mind of any one who impartially reads the record. A Mrs. Shewmake testified that she saw deceased on that morning pass her house; that

he had his dinner in a brown paper sack in his hand. Undertaking to give a reason for thinking it was on that date, she said that she usually did her baking on Friday and that was the way she fixed the date. Just how the good lady fixed her knowledge of the day on which she saw appellant, as being that on which she did her baking, is not clear from the record. Mrs. Mills testified that deceased carried his lunch in a brown paper sack on Thursday before he was killed, but that on said Friday morning he carried it wrapped in a copy of the Dallas Times Herald. Two gentlemen who talked with Mrs. Shewmake also testified that she told them that if Mr. Mills passed her house on Friday morning she did not see him. A Mr. Sportsman, who lived on the road from appellant's house to McKinney, also said that he thought he saw deceased pass his place about 6:15 that Friday morning. This witness admitted that he was not certain as to the day, and it was shown when he was before the grand jury he would not undertake to fix the day. A Mr. Simpson also testified that either on Thursday or Friday he saw deceased standing on the running board of a car going toward Mc-Kinney at about sun up. A witness was introduced by the State who testified that on Thursday morning he picked deceased up and the latter rode into McKinney standing on the running board of his car. It was also shown by witnesses who were searching for Mr. Mills after he disappeared, that near a little branch not far from said road they found a place where it appeared that somebody had rested and a couple of flies were flying around. We do not deem any of these facts of any weight as calling for a charge to the jury on the question of alibi. None of them seriously suggest or support the proposition that deceased was killed at a time and place when appellant was not present. The case is not one of circumstantial evidence. There appears in the record the positive confession and admission of appellant that he killed deceased at a certain time and place. If the jury believed this testimony, and that the witness who so swore was sufficiently corroborated, the fact of appellant's guilt in the transaction was beyond dispute. We know of no authority in which this court has held that the law of alibi should have been charged where the evidence tending to raise such issue was as slight and insubstantial as that in the instant case.

Appellant made a motion for a change of venue, supporting same by the affidavit of Tilda Stepp and Dave Stepp, the former being his wife and the latter his brother. Said application for change of venue was based upon the statement that in Collin County there existed so great a prejudice against appellant as that he could not secure a fair and impartial trial. The State controverted appellant's application both as to the fact of the existence of prejudice, and as to the means of knowledge of the compurgators. The trial court heard evidence *pro* and *con* upon the issue thus made. Appellant introduced

the contents of various newspaper publications about the time of the disappearance of Mills, and the finding of his body, and the making of the confession by Aryle Stepp. There were also thirty or more witnesses placed upon the stand from various portion of the county to testify to the condition of the feeling of the people in said county relative to this case. We have carefully examined the publications in question, and also the testimony of these witnesses. There appear no inflammatory appeals to the passions or prejudices of the people in any of said publications. As far as the facts connected with the transaction are concerned, the articles might be considered conservative. The testimony of a majority of the witnesses introduced on behalf of appellant in support of said motion, was to the effect that they knew of no prejudice in Collin County against the appellant, and that they believed that he could secure a fair and impartial trial at the hands of a jury of the citizens of said county. Some of said witnesses were of the opinion that appellant could not secure such fair and impartial trial. The State introduced between twenty and thirty witnesses and offered others, whose testimony was to the effect that there was no prejudice in said county against appellant, and that in the opinion of said witnesses he could secure a fair and impartial trial. The trial court overruled the motion for a change of venue and proceeded with the selection of a jury. During the examination of said veniremen and at the close of the examination of those summoned on the special venire, various renewals were made of the motion for a change of venue, based on the fact that between fifty and sixty of the veniremen stated that they had opinions, for which they were held disqualified by the trial court. A large number of the veniremen had conscientious scruples. When the venire was exhausted but five jurors had been secured. One of appellant's attorneys made affidavit setting up the fact that the special venire had been exhausted and no jury secured, and asking for the reconsideration of the matter and that the venue be changed. At this point the State again filed a contest of this application of the appellant in which it was stated that the original venire was summoned from sections of said county in which this case had been much discussed, but that there were sections of said county in which it had been very little discussed and in which there existed little, if any, prejudgment of the case, and that one hundred talesmen had been summoned by the sheriff and were present at court, brought from the sections of the county where the case was little known. The trial court overruled each of said applications of the appellant, including the last motion. Nothing further appears in the record reflecting any further light upon the manner and method or condition of the completion of the jury. If appellant was compelled to exhaust his peremptory challenges, this fact does not seem reflected in the record. If he was compelled to take any juror upon his jury

whom he believed to have an opinion in the case, this fact does not appear. If appellant went to trial before a jury believed by him to be fair and at no member of which jury he could direct an objection, this would seem to place him in rather a poor light to insist upon any alleged error in the overruling of his application for a change of venue. However, we have carefully inspected each and all of the matters set up and are not led to believe that the trial court abused his discretion in refusing to change the venue herein. Collin County was shown to be a very thickly settled county, and it was in testimony from many witnesses that there were parts of the county where the case had been little discussed, and, as stated above, we are led to believe that a jury was obtained which tried this case, no member of which was in anywise objectionable to the appellant.

This disposes of the various contentions made herein. The question of the punishment was for the jury. The appellant appeared in court affirming his poverty and inability to employ counsel to represent him, and the three distinguished gentlemen who appeared on his behalf in the trial court, and who in person and by brief presented his case to this court, were appointed by the trial court. As far as we can learn from the record every available effort has been made in his behalf.

Finding no error in the record, the judgment of the trial court will be affirmed.

*Affirmed.*

ON REHEARING.

October 11, 1922.

MORROW, PRESIDING JUDGE.—In his motion for rehearing the contentions advanced by the appellant upon the original submission are reiterated. In the light of the motion and the oral argument thereon, we have reviewed the record and are constrained to reassert our conclusion that the evidence of the accomplice witness Aryle Stepp was sufficiently corroborated by other evidence to meet the measure of the law which requires that the evidence aside from that of the accomplice tend to connect the accused with the commission of the offense. A further discussion of the corroborating evidence is not deemed desirable. By the evidence other than that of the accomplice the State proved that Aryle Stepp spent the night after deceased was missing at the home of appellant, and that together they left his home early in the night and returned late. Arlye Stepp testified that in this interval the body of deceased was placed where it was subsequently found. Apparently the last time deceased was seen alive was when he left his home a very short distance from the home of appellant. traveling a road that ran by appellant's corn field into

which, according to appellant's statement to the accomplice, appellant enticed the deceased and killed him.   There is no evidence in the record that the deceased was killed at any point other than that at which his body was found.   There is testimony adverted to in the original opinion to the effect that witnesses who lived near the road between appellant's house and McKinney had seen the deceased on the morning that he was killed beyond the point at which it is claimed by the State that his body was found.   Appellant insists that this testimony rendered it incumbent upon the court to instruct the jury upon the issue of alibi.   This matter was passed upon on the original submission and is again urged in the motion for rehearing. In our judgment it has heretofore been correctly disposed of.   Whatever be the cogency of the evidence tending to show that the deceased on the day that he was killed was seen at a point beyond appellant's corn field, the fact remains that his dead body was found in a well where the appellant and the accomplice placed it. The body, according to the accomplice testimony, was found on the premises of appellant at the point where appellant told the accomplice the deceased was killed.   We find no suggestion in the evidence that between the time the deceased left his home on the morning of his death and the time that the appellant on the afternoon of that day had the conversation with the accomplice, that the appellant left his premises.   The theory of alibi which embodies the idea that at the time the deceased was killed the appellant was at some other place than upon his premises where the dead body was found and where, according to the testimony, he killed the deceased, is without support in the record so far as we are able to perceive.   The action of the trial court in declining to submit to the jury that issue was not erroneous.

The motion for rehearing is overruled.

*Overruled.*