# FRANK G. VAUGHN V. THE STATE

No. 20113.   Delivered February 1, 1939.
Rehearing Denied March 8, 1939.

456

The opinion states the case.

*D. F. Sanders* and *John A. Veillon,* both of Beaumont, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—Conviction is for murder; punishment is assessed at confinement in the state penitentiary for a term of twenty-five years.

Appellant questions the sufficiency of the evidence to sustain the conviction. Appellant was a lawyer in the City of Beaumont. Joe Collier was a white man and Willie Ray was a member of the negro race. Collier testified that on the morning of September 6, 1935, he went with the appellant and the deceased, Willie Ray, from Beaumont to an abandoned place in Tyler County where appellant shot Ray with a pistol as he was seated in the front seat of the car. Ray fell forward and blood got on the seat and the inside of the front door. He and appellant picked up the deceased and carried him to an old well and threw him into it. It is obvious that this testimony makes a complete case against appellant. His contention, however, is that Collier was an accomplice and his testimony was not sufficiently corroborated to sustain the conviction. A careful analysis of the evidence leads us to a different conclusion.

Appellant represented the deceased in a workman's compensation case against the Federal Underwriter's Exchange. He entered into negotiations with the company which resulted in an agreement by which the company agreed to pay $324.00 in full payment of Ray's claim against it. On the 30th day of August, 1935, the company issued two checks, one for $48.60 payable to appellant as attorney's fees, and one for $275.40 payable to Ray. Both of these checks, together with a release were mailed to appellant, and the checks were cashed on the following day. It was clearly shown by the State that Ray did not indorse the check made payable to him, nor did he sign the release, this being done by some other person. It was also shown that late in the afternoon of September 5, appellant asked Navarro Goodman to bring Ray up to the city on the following morning as he had his check. According to the uncontradicted testimony, this check had been cashed by appellant several days prior thereto. Goodman accordingly brought Ray to town and while they were standing on the sidewalk talking, appellant came along and said: "Come on Willie, let's go." The two went down the street together. Some twenty or twenty-five minutes

later, Goodman saw the appellant, Ray and Collier going north in appellant's car in the general direction of where Ray's body was subsequently discovered. This was the last time that Ray was ever seen alive.

Ray's remains were found in the well and were identified by the broken bone of the arm and his wearing apparel. A chemist discovered spots on the inside of the front door of appellant's automobile and these spots proved to be blood. Sometime after the disappearance of Ray, the police of the City of Beaumont took Goodman to the police station to question him in reference to his knowledge of Ray's disappearance. Before they could finish questioning him, appellant appeared on the scene, apparently very angry. He wanted to know what the police wanted with Goodman and when told of their purpose, he said: "He doesn't know anything about Willie Ray," and requested them not to pick him up again as Goodman was chauffering for him. This was a circumstance which tended to show that appellant sought to hinder the police in their investigation of the offense. Appellant did not testify.

It is commonly known that there is always an underlying cause or motive for every malicious murder. Here the motive on the part of the appellant was to remove Ray as a witness on any charge of embezzlement which might be brought against him.

In summing up the evidence it is noted that appellant had collected Ray's money and had it in his possession; that Ray was last seen alive while in company with appellant and Collier in appellant's automobile going in the direction of Tyler County. That his body was subsequently discovered in the abandoned well; that blood was found on the inside of appellant's car which was used on the occasion in question; that appellant later attempted to interfere with the officers in their investigation of the crime. All of these facts and circumstances tended to connect appellant with the commission of the offense and sufficiently corroborated the accomplice, Joe Collier. See Stepp v. State, 244 S. W., 141; Howard v. State, 13 S. W. (2d), 80.

Appellant urged two objections to the court's charge. One of these was that the court failed to apply the law of circumstantial evidence to the corpus delicti and the other that he failed to apply the law of circumstantial evidence to the testimony of the accomplice, Joe Collier.

Under the facts of this case, the court was not required to charge on the law of circumstantial evidence in either instance.

The commission of the offense was proved by the direct and positive evidence of Joe Collier, the accomplice. See Wells v. State, 134 Tex. Crim. Rep., 412 and the authorities there cited.

Appellant has five bills of exceptions, all complaining of the admission of testimony. His only objection to the testimony at the time was that the same was immaterial and irrevelant. This court has consistently held that an objection to proferred testimony that it is irrevelant and immaterial is too indefinite to require consideration. 4 Tex. Jurisprudence, Sec. 38, p. 60 states the rule to be as follows: "Complaints that proferred evidence is incompetent, irrevelant, immaterial, prejudicial, and the like have frequently been held too indefinite to demand consideration." See, also, McGrath v. State, 35 Tex. Crim. Rep., 413; Lucera v. State, 108 Tex. Crim. Rep., 441; Wade v. State, 103 Tex. Crim. Rep., 395 and authorities cited.

Appellant requested two instructions to the effect that Joe Collier was an accomplice and that the State had elected to use him as a witness against the defendant and that under the Constitution and laws of the State, Collier could not be tried, convicted and punished for the murder of Willie Ray. We know of no such provision in the Constitution or of any statute to this effect. He also requested a charge on circumstantial evidence and some other charges upon theories advanced by appellant but not based on evidence. We have examined all of these charges in connection with the court's main charge and reached the conclusion that none of them reflect error of a reversible nature.

The judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, JUDGE.—In his motion for rehearing appellant insists that we were in error in holding that the accomplice witness, Joe Collier, was sufficiently corroborated. We deem it unnecessary to again set out the testimony. Suffice it to say that we have re-examined the record in the light of the motion and are constrained to adhere to the conclusion expressed in the original opinion.

For the purpose of showing motive, the State introduced testimony tending to show that appellant had forged the name of the deceased to a certain check. In his motion for rehearing

appellant asserts that it was incumbent upon the court to charge the jury that they must believe beyond a reasonable doubt that appellant committed the forgery before they could consider such evidence. We quote from the motion as follows: "This honorable court was in error in failing to reverse the judgment of conviction, because the trial court refused to instruct the jury in that portion of the court's charge, wherein it instructs the jury, limiting the evidence introduced as to the forgery of Willie Ray's name on the check, because the court did not instruct the jury, that they must believe, beyond a reasonable doubt, the defendant committed the forgery, before they could consider said evidence." It does not appear that appellant excepted to the charge on the ground that it failed to embrace such an instruction, nor did he present to the court a requested instruction relative to the matter.

Appellant also insists that, in limiting the testimony touching the alleged forgery of the name of the deceased, the court assumed that appellant committed the forgery. We find no such assumption in the limiting charge.

Appellant next contends that his bill of exception No. 1 reflects reversible error. It is shown in said bill that an attorney testified on cross-examination by the State that he had filed a suit for the appellant against a bank to enjoin payment of a cashier's check. Appellant objected to this testimony upon the ground, among others, that it tended to establish or prove that appellant had acted dishonestly and was, in effect, an attempt to put his character in issue. We perceive nothing in the testimony set forth in the bill of exception that was calculated to lead the jury to believe that appellant had acted dishonestly, nor can it be said that the effect of such testimony was to place in issue the character of the appellant. We find the following recital in the bill: "The evidence did not in any wise establish that the matter in controversy in the law suit between the defendant and the bank was the money alleged to have been embezzled by the defendant from Willie Ray. * * *." This statement is not sufficient to negative the materiality and relevancy of the testimony elicited from said attorney. As far as the bill reflects the matter, proof that appellant filed suit against the bank might have conduced "to the proof of a pertinent hypothesis"—a pertinent hypothesis being one which, if sustained, would logically influence the issue. See Branch's Ann. P. C., sec. 97. We think the bill of exception fails to reflect error.

If the reception of the testimony complained of in bill of exception No. 3 constituted error—and this is not conceded—

we think it was not of sufficient moment to warrant a reversal of the judgment.

After carefully re-examining the record, we are constrained to overrule the motion for rehearing.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.