## THE STATE v. MARTIN.

1. MURDER—CIRCUMSTANTIAL EVIDENCE—CORPUS DELICTI.—Where a body has been found, circumstantial evidence is admissible for the purpose of showing the identity of the body found with the person of the deceased.

2. EVIDENCE.—In a murder case, it is harmless error to permit a witness to state that the deceased worked with him one year before the alleged homicide.

3. IBID.—It is competent for a witness to state that he saw a person shortly before the alleged homicide, although he did not know him personally, when he describes him and gives the circumstances under which he met him, corroborative of other facts sworn to by other witnesses.

4. IBID.—It is competent to admit in evidence a board taken from the floor of the house in which defendant lived at time of alleged homicide, upon which were said to be blood stains; and the fact that it was cut from the floor nine or ten months after does not affect its competency.

5. EXPERT EVIDENCE—PHYSICIANS.—Physicians may give their opin-

ion as experts, as to whether certain stains on a board are blood stains.

6. CHARGE.—The charge of the Circuit Judge, taken as a whole, is not objectionable.

7. CORPUS DELICTI.—The proof of the *corpus delicti* is a question of fact for the jury, and cannot be reviewed by this Court.

Before BUCHANAN, J., Hampton, November, 1895.   Affirmed.

John Martin was indicted for the murder of Peter Polite, found guilty, and recommended to the mercy of the Court. From a sentence to life imprisonment the defendant appeals.

*Mr. W. S. Tillinghast* and *Warren & Smith*, for appellant, cite State v. Addy, 28 S. C., 4.

*Solicitor Bellinger*, contra, cites: *Corpus Delicti:* State v. Bennett, 40 S. C., 308; King v. Bennett, 4 Bam. & Ald., 95, 6 E. C. L., 404; Campbell v. People, 42 N. E. R., 126; McCullough v. State, 48 Ind., 109; State v. Williams, 7 Jones, N. C., 446; Williams v. Com., 29 Pa. St., 102.   *Evidence:* Mobley v. R. R., 20 S. E. R., 83.   *Experts:* Rogers Expert Testimony, p. 141, secs. 59, 60.   *Charge:* State v. Williams, 14 S. E., 821; State v. Owens, 22 S. E., 244.

July 11, 1896.  The opinion of the Court was delivered by

MR. JUSTICE JONES.  The appellant was indicted for the murder of one Peter Polite, the jury found him guilty, with a recommendation to mercy, and he was, according to statute, sentenced to imprisonment for life.  The proof of the *corpus delicti* was by circumstantial or presumptive evidence alone.  No evidence was offered in behalf of the defendant.  The testimony for the State tended to show that on Sunday night before Christmas, in 1894, Peter Polite, having in his pocket $40 or $45, his savings from his labor that year, left the premises of John C. Davis, a few miles across the Savannah, in Georgia, where he had been engaged at work, and that same night arrived in Hampton County.  His movements in Hampton County,

in the neighborhood of Shirleys, was traced until about 11 o'clock on Tuesday, Christmas Day, when he was last seen alive with the defendant, John Martin, going towards the house where defendant lived, on Mr. McKensie's place. He was described by witnesses as a small negro man, wearing a grey overcoat and dark, striped pants. On the morning of the 26th of December, 1894, a small outhouse, containing some hay and fodder, on the premises of Mr. Solomans, about one-half mile from where the defendant lived, was destroyed by fire, and later in the day, in the debris of the burned house, was discovered the charred body of a human being, with both arms missing, the lower part of both legs gone, face burned beyond recognition, and with the top of the skull crushed in, according to one witness, cut off smooth as with a heavy, sharp instrument, and such a wound as to produce immediate death, as testified by the physician who made the *post mortem* examination. The action of the fire and heat being less upon the back than upon the other parts of the body, the physician, from an examination of some cuticle not destroyed there, testified that the human being was a negro, and it was apparent he was a man, and of small size. Among the ashes where the body was found were discovered some buttons, also buckles, such as are used on pants and vests, a piece of dark, striped cloth, a collar button, pieces of a small glass vial or bottle, a quarter dollar, some pieces of slate, and a slate pencil. Witness testified that the piece of cloth was like the cloth of which Peter Polite's pants were made, and which he wore at the time of his disappearance. A witness testified that the collar button found was of the same pattern, adjusting with a spring, as one worn by Peter Polite on the Sunday previous. Two witnesses testified that Polite carried a slate pencil the size of the one found, one of the witnesses identifying the pencil found with the pencil carried by Polite by an indentation on the side of the pencil by a piece being slit or scaled off, one having seen Polite with such a pencil on Sunday, and the other on

Monday night, previous to his disappearance. This was the evidence relied on to establish the identity of the body found with the body of Peter Polite, alleged to have been killed. Defendant's counsel objected to the evidence as to the piece of cloth and the slate pencil, was overruled, and now excepts thereto as follows: "For error (1) in allowing witness to testify as to charred cloth, without first showing that it came from Peter Polite's body. (2) In admitting, against objection, a piece of pencil which appeared to be like other pencils, without proof that it came from the body of Peter Polite."

These exceptions seem to raise the question as to the admissibility of circumstantial evidence to prove the fact of the death of Peter Polite, and the identity of the body found with that of Peter Polite, alleged to have been killed by the defendant. Otherwise, the exceptions relate merely to the weight and sufficiency of the evidence, which, we have very often declared, it is not in our power to review in a case at law. Notwithstanding the old rule, that to warrant a conviction of murder or manslaughter, there must be direct evidence of the fact of killing, or of the finding and identification of the dead body, as laid down by Sir Mathew Hale, in 2 Hale P. C., 290; by Lord Stowell, in *Evans* v. *Evans*, 1 Hagg, Consist., 105; and by Lord Abinger, in *Reg.* v. *Hopkins*, 8 Car. & P., 591. Yet there were familiar exceptions, in cases where the victim's body was thrown overboard at sea, or entirely destroyed, or so destroyed as to be beyond recognition. In *Rex* v. *Clewes*, 4 Car. & P., 221, the body of a man, after many years, was identified by some peculiarity of the teeth; and in the celebrated and familiar Webster case, 5 Cush. Rep., 295, where Parkman's remains were identified by some mineral teeth found in defendant's laboratory and elsewhere, which a dentist testified were part of a set made by him for the deceased. See, also, *People* v. *Wilson*, 3 Parker, 199, and Hindmarsh's case, 2 Leach, 648. Mr. Greenleaf, in his work on Evidence, § 30, says: "Even in

cases of homicide, though ordinarily there ought to be the testimony of persons who have seen and identified the body, yet this is not indispensably necessary in cases where the proof of the death is so strong and intense as to produce the full assurance of moral certainty. * * * It is obvious that on this point no precise rule can be laid down, except that the evidence ought to be strong and cogent, and that innocence should be presumed until the case is proved against the prisoner in all its material circumstances beyond any reasonable doubt." In Clark's Criminal Law we find this statement: "The rule is, that there can be no conviction of a felonious homicide on circumstantial evidence, unless the body of the person alleged to have been killed was found; it is not enough to merely show that it is missing. This is not necessary where there is sufficient direct evidence to satisfy the jury that the homicide was committed; as, for instance, where parts of the body are found, and marks and indications point to the identity of the deceased." In the case of *McCullough* v. *State*, 48 Ind., 109, evidence of the finding of a skeleton of a human being of the sex of the person charged to have been murdered, and corresponding to his size, justified the admission of circumstantial evidence to identify the skeleton as that of the murdered party. In the case of *State* v. *Williams*, 7 Jones Law, N. C., 446, 78 Am. Dec., 248, it was held that to identify charred bones as those of a missing woman, supposed to have been murdered, it is competent to show that certain hair-pins were found with the bones, and that the woman was in the habit of wearing such pins two or three years before. The weight of modern authority is undoubtedly to the effect that all the elements constituting the *corpus delicti* may be proven by circumstantial evidence. The *corpus delicti*, in a case of murder, consists of two elements, the death of a human being, and the criminal act of another in causing that death. The identification of the body found with the person alleged in the indictment to have been killed, whether treated as an additional element

of the *corpus delicti* or as a necessary part of the proof of
the other two elements, is clearly within the rule. In New
York, where penal code prohibits a conviction unless the
death of the person alleged to have been killed is estab-
lished by direct proof, it is, nevertheless, held that said
prohibition does not exclude proof of circumstances tend-
ing to establish identity, *People* v. *Beckwith*, 108 N. Y., 67;
and that a conviction for murder without direct proof of
the identity of the victim is sustainable, *People* v. *Palmer*,
109 N. Y., 110. See Am. & Eng. Enc. Law, vol. 4, p.
309, and vol. 9, p. 728; note to *Ripey* v. *Miller*, 62 Am.
Dec., 177; note to *State* v. *Williams*, *supra*, 78 Am. Dec.,
248, and the many cases cited. The late case of *Campbell*
v. *People* (Ill.), 42 N. E. R., 113, 42 Central Law Journal,
154, after an exhaustive review of the authorities, goes to
the full length of holding that every element of the *corpus
delicti* may be proven by circumstantial evidence, and ap-
plied this doctrine to the case of the alleged murder of a
newly born child, although it did not appear that any one
had ever seen the child.

Without feeling necessity now to go that far, we feel as-
surance of absolute correctness, and of being safely distant
from all dangerous ground, to hold that where the body has
been found, as in this case, although burned and mutilated
beyond recognition by sight, that circumstantial evidence,
such as objected to in this case, is perfectly competent to
prove the identity of the body found with the person of
Peter Polite, alleged to have been murdered. The suffi-
ciency of the evidence of identity, as of all other material
facts, was wholly for the jury, and the jury in this case
were fairly instructed that they must be satisfied beyond a
reasonable doubt of the identity of the body found with
Peter Polite, and of the criminal agency of the defendant
in producing his death.

In reference to that part of the first exception which
alleges error in allowing witness to testify where Peter Po-
lite worked a year before the alleged homicide, we need

only say that, conceding the irrelevancy of such testimony, it was immaterial and harmless, and affords no grounds for a new trial. *Smith* v. *Walke*, 43 S. C., 381; *Finley* v. *Cudd*, 42 S. C., 121.

The testimony of Lawrence Atkins, to show that he had seen Peter Polite a short time before his disappearance, was competent, notwithstanding he stated that he did not know Peter Polite. He saw the person called Pete, and gave circumstances, time, place, and persons accompanying the man called Pete, corroborative of other witnesses who saw Peter Polite at the same time and place, and with the same persons. Exception 3 is, therefore, overruled.

The fourth exception is as follows: "4. That his Honor erred in admitting, against objections, the board with stains on it, such board having been cut from the floor of the house a year after thè alleged homicide, and after the house had been occupied by different families." This piece of the floor, according to the testimony, was taken from the house in which the defendant lived at the time of the alleged homicide, a few days before the trial in October, after the defendant had moved from it, and while it was occupied by another person. It was testified, without objection, that blood stains, or what resembled blood stains, were found in several places over the floor of the house, after the March term, 1895, while the house was vacant, and that the floor had the appearance of having been scoured. This piece of the floor was offered as a specimen of the stains, supposed to be blood stains, found on the floor of the house. The evidence was competent, as a circumstance tending to show the defendant's connection with the death of Peter Polite. The fact that the board was taken from the floor nine or ten months after the alleged homicide, and while the house was occupied by another, might tend to weaken the force, but could not affect the competency of the evidence.

The fifth exception alleges error in the admission of the

testimony of two physicians, who stated that, in their opinion, the stains on the piece of the floor were blood stains, the grounds of objection being, "that it was a mere opinion of said physicians, based upon crude and insufficient analysis." This objection affects the sufficiency and not the admissibility of the evidence. The physicians gave their opinion as experts, after an examination of the stains under a microscope and after a chemical analysis. The evidence was clearly competent.

The sixth exception complains that the Circuit Judge erred in charging the jury as follows: "There is some evidence, however little, however insignificant, that points sooner or later, and oftentimes very soon, to the person who committed the crime," thereby intimating to the jury that the testimony pointed to the prisoner. This exception cannot be sustained. We have often held that the charge of the Circuit Judge must be construed as a whole. This is but an isolated sentence taken from the part of the charge relating in general terms to the nature and necessity of circumstantial evidence, and in no way intimated the opinion of the Court as to the guilt of the prisoner.

The seventh exception alleges: "that there is in the whole scope of the testimony nothing to establish a *corpus delicti.*" This exception presents no question of law—it is but another way of stating that the evidence was not sufficient to prove the death of Peter Polite and the agency of the defendant in producing his death. This is a question of fact which the jury has settled, and is not within our cognizance. In this opinion we have not undertaken to state the circumsiances relied on by the State to connect the defendant with the murder of Polite, but have mentioned only so much of the testimony as was proper to make clear the points in controversy here.

The judgment of the Circuit Court is affirmed.