## P. W. Howard v. The State.

No. 11519.   Delivered April 18, 1928.
Rehearing denied January 23, 1929.
Second rehearing denied February 13, 1929.

*Jno. B. Howard* and *Fryer & Cunningham* of El Paso, for appellant.

*C. L. Vowell*, District Attorney, of El Paso and *A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Appellant was convicted of the murder of N. V. Nixon, alleged to have been committed on or about the 19th day of September, 1920. The penalty assessed was death.

A former appeal of this case will be found reported in 103 Tex. Crim. Rep. 205.

The sufficiency of the evidence to identify the body found as that of the deceased as required by Art. 1204 of the Penal Code is under vigorous attack on this appeal. It is particularly insisted that the sex of the body found was not shown. A brief resume of the evidence is deemed necessary.

The State used as a witness an admitted accomplice, one W. S. Ham. It appears that the accomplice, Ham, and appellant, Howard, visited El Paso in September, 1920. There appeared on the register of the Hotel Grand in El Paso the names "P. W. Howard, Big Springs," and "W. S. Ham, Ranger," of date, September 13, 1920. On the register of the Tri-State Hotel, El Paso, on September 16, 1920, appeared the names, "Howard Warner, Mauldon, Missouri," and "J. B. Biggs," proven to be in the handwriting of appellant, Howard. Accomplice, Ham, testified that he went to El Paso in company with Howard hunting work; that they stayed at the hotels last above mentioned, the appellant having registered for both of them; that failing to find work he and Howard were to return to their home at Big Springs in an automobile, Howard claiming that he desired to prospect for oil on the trip. Howard hired deceased Nixon with a Ford touring car to take them across the country. In the outskirts of El Paso he bought a shovel. On the first night they stayed at the house of a garage man where the car was repaired. They ate supper on the afternoon of the second day at Toyah, where deceased and appellant talked to different parties. On that night they stayed at Pecos, Texas, where appellant again registered for both of them, in whose name accomplice did not know. Leaving the hotel early the next morning deceased purchased gasoline for his car. Some distance out of Pecos eastward appellant had the car stopped and went a distance of about three hundred yards from the road with his shovel, ostensibly prospecting for oil. He there dug a hole about four feet long, three feet wide and knee deep, and directed accomplice, Ham, to return to the car and get deceased to come out there so that he could show him what he had found. Deceased went out. Ham followed him. Two shots were fired by appellant. Deceased fell to his knees and begged appellant not to kill him, "to let him live." Appellant struck him two heavy blows over the head with the shovel which accomplice saw. He closed his eyes and claims to have seen no more. He was directed after a little while to get the shovel. Resuming their journey in deceased's car, they arrived at Big Springs late that night. A few days later negotiations were partly conducted by appellant for the sale of the car of deceased to one Powers, which sale was thereafter consummated by Ham. In December, 1920, a body was found at the point testified to by Ham, and the sheriff of the County unearthed same and found the body, dressed in sox, underwear, shirt and vest, a cap laying nearby. A tire tester, a watch, notes payable

of the Tri-State Motor Company and executed by N. V. Nixon, chauffeur's license from the City of El Paso, receipt for registration of the car of deceased, and a passport were found on the body. These same notes were thereafter identified as notes which had previously been given by deceased for the purchase of the automobile in which the trip was made. The automobile was recovered and positively identified as that of Nixon, the deceased. Some of the clothing was positively identified as belonging to the deceased. The passport to Juarez issued to deceased and found on the body, had on it a photograph of deceased. Other papers with the body were identified as belonging to deceased. Deceased was seen to leave El Paso by witnesses in his Ford car going in the direction of Pecos in company with Ham and appellant. By a garage man at Sierra Blanca it was shown in corroboration of Ham that Nixon and two persons stayed at his house in September, 1920, and that he fixed a car for them. By two witnesses at Toyah it was proven that Nixon in company with two men, one of whom was shown to be appellant, ate supper together at Toyah and there appellant conversed with one of said witnesses about the oil business and exhibited maps. The three parties left together, going in the direction of Pecos. At Pecos it was shown by a garage man that he sold oil about this time to Nixon and that two men were in the car with him. In a hotel register found at the Central Hotel at Pecos it was proven that the following names in the handwriting of appellant appeared: "H. J. Warner, St. Louis, J. B. Biggs, St. Louis," and the name of Nixon also appeared in a different handwriting. By the former wife of appellant it was shown that he had blood spots on his shirt when he arrived home the night of the homicide.

Deceased was never seen nor heard from after this trip with appellant and Ham. Appellant and Ham were arrested in California about 1923.

That the remains of a deceased person may be identified by circumstantial evidence has long been the settled rule. Kugadt v. State, 44 S. W. 989, 38 Tex. Crim. Rep. 681, and authorities there cited. The body found in this instance was dressed in a man's wearing apparel. With it was found a passport to Juarez, issued in the name of deceased with his photograph. Accompanying it also were numerous papers completely identified as having been possessed by deceased prior to his death and all bearing his name. The evidence indisputably shows that deceased Nixon was a male and it would be an absurd and wholly illogical inference that such clothes

and articles found on the body could have been possessed by a female. They point unmistakably to the inference that they belonged to and were upon N. V. Nixon, a male person. The evidence of identification is, in our opinion, sufficient. Wilganowski v. State, 78 Tex. Crim. Rep. 337. Kugadt v. State, supra. State v. Martin, 25 S. E. 113.

The Court charged that the witness Ham was an accomplice and gave the usual charge on accomplice testimony. In addition we note he instructed the jury as follows:

"Unless you believe from the evidence, beyond a reasonable doubt, that N. V. Nixon is dead and that the defendant, P. W. Howard, killed him either in person or acting as a principal as above defined to you, and unless you further so believe that the body which the witness John Wade testified he found in Ward County was the body of N. V. Nixon, you will acquit the Defendant."

Certainly the evidence as a whole was sufficient to go to the jury on the question of identification and the issue was pointedly charged upon by the Court and found by the jury against appellant and in the face of the above testimony, this Court would not be authorized to disturb such finding.

By Bill of Exception No. 35 it is made to appear that the District Attorney in his closing argument to the jury made use of the following language:

"The higher points of the killing of Nixon are indelibly impressed upon that fellow and I don't believe he could keep from telling it. Not him (pointing at defendant). Ham couldn't keep from telling it."

The record suggests that Ham was under vigorous attack by appellant throughout the trial. It was undoubtedly the theory of appellant that Ham committed the homicide without the guilty participation of appellant, as the Court charged upon this theory. The record further shows that when confronted with the accusation Ham told of his part in it. In the case of Combs v. State, 55 Tex. Crim. Rep. 334, an argument of the District Attorney to the effect that accused failed to deny his guilt of mistreating his wife which occurred out of court was not a reference to defendant's failure to testify. The rule is well established that in any argument of the State's Attorney claimed to be a reference of defendant's failure to testify, the "implication must be a necessary one." If it could refer to or rest upon any other fact in evidence, the statute is not violated. Jones v. State, 85 Tex. Crim. Rep. 538. The quoted lan-

guage must have been in reply to the appellant's attack upon Ham and in explanation of why he told about the killing, and was at most only a casual and remote reference to appellant's failure to testify, but evidently not intended as such. Under such circumstances no error is shown. 16 C. J., p. 903, and authorities there cited. We doubt if the jury could have so understood it. Besides the said bill fails to negative the existence of facts which would have made such argument permissible. We are not called upon to go through the entire statement of facts to ascertain whether or not appellant had not been accused out of court of this murder under circumstances that would make his failure to deny or tell it admissible as a circumstance against him and give the State the right to refer to such fact. Moore v. State, 107 Tex. Crim. Rep. 287, and authorities there collated. What is said above disposes of all of appellant's complaints with reference to arguments of the District Attorney. None of such bills of exception manifest error in our opinion.

A book found at the Central Hotel in the town of Pecos, Texas, and purporting to be the Central Hotel register of Pecos, Texas, and showing in the handwriting of appellant the names of H. J. Warner, St. Louis, J. B. Biggs, and N. V. Nixon was introduced in evidence by the State. The accomplice testified that he, appellant and deceased stopped at this hotel the night before the homicide. Objection was made that this was not shown to be the authenticated hotel register of such hotel. Pecos was near the scene of the killing. Such entry was admissible to prove the presence of appellant in the vicinity of the killing under an assumed name. The objection goes to the weight rather than the admissibility of the evidence. The authenticity of the register was not the issue, but rather the actual presence of defendant at or near the scene of the killing. Any writing of appellant appearing on anything near the scene of the homicide was admissible as a circumstance tending to prove his presence at the time and place claimed by the State.

The State proved by witness Williams that he saw deceased "pull a roll of bills out of his pocket." Objection was made to this because it was indefinite and uncertain as to time, irrelevant and immaterial and was an effort of the State to show deceased had a roll of bills the day preceding the homicide. The State contended the motive for the murder was robbery. No bills or paper money were found on the body of deceased. Williams was credit manager for an automobile concern from whom Nixon had purchased an automobile, payable in installment notes, one of which was due at or

about the date of the killing. The detailed conversation between witness and deceased with other evidence of the due date of these notes makes it clear that this conversation happened just about the time or just prior to the killing and was clearly admissible as a circumstance to show that when Nixon started upon the journey with appellant which ended in his death, he had with him a roll of bills. Lovel v. State, 93 Tex. Crim. Rep. 615.

Proof was made that the head of Nixon when his body was discovered "seemed to have been broken at some time into small pieces." Objection was made to this that it was not calculated to shed any light on the transaction and was calculated to fill the jury with horror and repugnance. "It is essential to a conviction for any degree of culpable homicide, first, the deceased should be shown to have been killed; and secondly, this killing should have been proved to have been criminally caused." Hunter v. State, 34 Tex. Crim. Rep. 603, citing Wharton on Hom., Sec. 641; Lightfoot v. State, 20 Tex. Crim. App. 77; Harris v. State, 28 Tex. Crim. App. 308. To show the indispensable fact that the death of Nixon was criminally produced it is obvious that proof of a fact tending to show his head had been crushed or beaten to pieces was admissible. Evidence is not rendered inadmissible by sheer force of the fact that it might prove inflammatory. Then too, proof of this fact rendered his identification impossible from recognition of his facial features, and is explanatory of why the State resorted to proof of identification by circumstances.

Complaint is made of proof by witness Wade that some two and a half years after the homicide he took the accomplice Ham over the route alleged to have been traveled by Ham, appellant and deceased immediately preceding the homicide and that certain places on such last mentioned trip were pointed out by Ham to witness Wade, notably at Toyah where the trio had supper, and some rooms at Pecos. This was hearsay and not admissible. We think, however, its admission was not prejudicially erroneous. Ham testified on the trial in detail to substantially the same facts told to witness. Moreover it conclusively appears by evidence apart from that of Ham that deceased traversed this same route with two parties and must have been at or near the places pointed out by Ham to witness. The evidence aside from this showing that appellant, Ham and deceased were together on this trip is of such cogency as to leave no room for doubt of its truth and the probative force of the evidence under

attack is too slight to have adversely affected appellant and was harmless in our opinion.

It is insisted that the Court erred in refusing the charge that the State relied on circumstantial evidence for its identification of the body of deceased and in not applying the law of circumstantial evidence to such matter as fully set out in defendant's special charge No. 3. "A charge on circumstantial evidence is only required when the evidence of the main facts essential to guilt is purely and entirely circumstantial." Buntain v. State, 15 Tex. Crim. App. 520. Identification was only one fact necessary for the State to prove. There are very few convictions where every element of the offense is directly proven without reliance either in whole or in part upon circumstances. If a charge upon circumstantial evidence were demanded in every case where proof of any element thereof depended upon circumstances, few cases reaching this Court would be free from such error. Appellant's contention has never been the law. Davis v. State, 295 S. W. 608. Branch's P. C., P. 1039.

Error is alleged in the Court's action in admitting over appellant's objection the testimony of a former wife of appellant to the effect that when appellant arrived at Big Springs shortly after the homicide "that there was quite a little blood on the front of his shirt." The claim is made that only an expert could give such testimony. The contention is without any merit. Of the rule in such cases it has been said:

"All persons are more or less familiar with the appearance of stains caused by blood. It has, therefore, been repeatedly held from time immemorial that ordinary witnesses may testify that certain stains on clothing or other articles 'look like' or resemble blood stains. A nonexpert may state that he saw stains and describe their color, or that garments 'looked like the blood had been washed off.' No peculiar skill or experience is required to be possessed by a witness who saw the stains in court or elsewhere to render his evidence admissible, nor need a chemical analysis, or test, or a microscopical examination have been made." Underhill's Criminal Evidence, 3rd Edition, Sec. 515.

Other bills of exception not discussed are believed to be without merit.

Believing the evidence amply sufficient to corroborate Ham and that no reversible errors appear in the record, the judgment of the trial court is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant stresses in his motion for rehearing claimed errors on the part of the trial court in not charging generally upon circumstantial evidence and in not charging upon that subject specifically as it related to the identification of Nixon's body. After having carefully examined the facts bearing upon the matter and also the authorities relied upon by appellant we find ourselves unable to adopt his viewpoint. The death of Nixon by the criminal agency of appellant is shown by the direct evidence of the accomplice Ham. He details the shooting at deceased by appellant and how appellant struck deceased two severe blows on the head with the shovel while he was pleading for his life, and how appellant dragged deceased's body to the prepared grave. Repeatedly in his evidence Ham refers to the "killing" of deceased, or says he was "killed." In some of its grewsome details the case of State v. Calder, 23 Montana 504, resembles the present one. It was there held that no charge upon circumstantial evidence was required. From the testimony of Ham it appears that after digging a grave appellant induced deceased to approach it, and after two shots had been fired by appellant deceased was seen on his hands and knees imploring appellant not to kill him; that appellant then struck deceased with a shovel and he fell on his face, and then witness saw appellant dragging the "body" of deceased to the grave. It might with plausibility be asserted that the "body" which Ham saw was the corpse of deceased. The body discovered and disinterred was identified as Nixon's, completely and fully. The jury could have reached no other conclusion. To show such identity the state resorted to proof of circumstances many of which were not discovered until many months after the killing. This does not in our opinion make the case one in which the state relied solely upon circumstantial evidence.

Sustaining the court's admission of evidence by Williams that he saw deceased in possession of a considerable sum of money just before he started on the fatal journey with appellant and Ham the case of Lovel v. State, 93 Tex. Cr. R. 615, 248 S. W. 349, was cited in our original opinion. Among other objections it was urged that the testimony of Williams related to a "transaction occurring in the absence of defendant." (Bill No. 8.) The motion for re-

hearing on this point is predicated on the proposition that such evidence was inadmissible unless it was shown that appellant had knowledge that deceased was in possession of the money. It is nowhere certified in the bill that appellant did not have knowledge of such fact. That appellant was not present when Williams saw deceased with the money would not be conclusive that appellant was ignorant of the fact that deceased did have it. The parties had been traveling together for several days during which time deceased had bought gasoline and oil for the car. Circumstantially it was thus shown that if deceased had money on his person appellant had an opportunity of knowing it. It is appellant's claim that the Lovel case (supra) when read in connection with Maxey v. State, 104 Tex. Cr. R. 661, 285 S. W. 617, and McCoy v. State, 106 Tex. Cr. R. 593, 294 S. W. 573, supports his contention that it was inadmissible to receive evidence that deceased shortly before the killing had money in his possession unless appellant knew of such fact. If the cases mentioned have been construed as announcing such a general rule they are misunderstood. The language in McCoy's case which seems to have been so construed by appellant will be found really to have reference to proving a custom between deceased and another person of which custom accused was ignorant. If deceased had in his possession money or other property before the killing which was absent from his dead body it would tend to support the state's theory that the killing was done by some one for gain; if the property was found in accused's possession it would point to him as the murderer; likewise, if the state could also show that accused knew beforehand that deceased had the money or property it might suggest motive on his part for the killing. So far as we know it has always been permissible to prove the financial condition of deceased and accused when such testimony was relevant and tended to show motive for the homicide. Cordova v. State, 6 Tex. Cr. App. 207; Early v. State, 9 Tex. Cr. App. 476; Garza v. State, 39 Tex. Cr. R. 353; Johnson v. State, 48 Tex. Cr. R. 423; Branch's Ann. Tex. P. C., Sec. 1879; Underhill on Crim. Ev. 3d Ed. Sec. 503.

It is forcibly urged that we were in error in disposing of appellant's bill of exception No. 35 regarding the argument of the district attorney. When the matter complained of is not a direct reference to the failure of the defendant to testify the implication that it was such a reference must be necessary. We cannot regard the argument which is set out in the original opinion as a direct reference to the failure of defendant to testify and this court is always confronted

with difficulty in determining if the implication is a "necessary one" because of the fact that it is difficult, if not impossible, to bring before us in a bill of exception the exact surroundings and "setting" at the time the argument is made. This necessarily must enter into the question and the trial court should be in a much better position than we are to determine the matter. The district attorney said: "The high points of the killing of Nixon are indelibly impressed upon that fellow and I do not believe he could keep from telling it;"—if when he reached this point in his argument it occurred to him that from the situation of the parties in the court room or from other circumstances in the case his language might possibly be construed as having reference to accused, he immediately disclaimed any such intention and made it clear that he was referring to a witness and not to accused by use of the further language "Not him (pointing at defendant) Ham couldn't keep from telling it."—for us to hold that such incident reflected an infringement of Art. 710 of the Code of Criminal Procedure would seem to be going too far. The incident is subject to such construction. Neither do we think that Smith v. State, 106 Tex. Cr. R. 586, 294 S. W. 221 is in conflict with our announcement here. In that case the reference in so many words was to the defendant's failure to testify.

Appellant still insists that the entries on the Central Hotel register at Pecos were improperly admitted in evidence. Ham testified that he, appellant and Nixon stopped at this hotel at a time which corresponds with the date shown on the hotel register; that he saw appellant and Nixon write in the register; that later he was again at this same hotel with the sheriff. The sheriff says that the Central Hotel was not then being operated, but that he obtained at said place from the man in charge the hotel register in question upon which in handwriting shown to be appellant's were the names of Warner and Biggs, and immediately under these names appeared that of deceased. Under the circumstances we still fail to discover any error in admitting the evidence. We think the cases to which we are referred do not control. Patterson v. Gulf Colorado and Santa Fe Ry., 126 S. W. 336, relates to admitting in evidence books of the railway company without proof that they were correctly kept. Lancaster, et al. v. Rogers and Adams, 235 S. W. 643, and Morris v. Davis, 3 S. W. (2d) 109, only hold that the notation on bills of lading regarding the condition of the shipments to which they related were inadmissible in the absence of proof as to who made the notations. In the present case it was shown circumstantially that appellant and deceased wrote the names on the register,

Appellant again urges that the trial court committed error in permitting the sheriff to testify that some two and a half years after deceased was killed the witness Ham pointed out certain places to the sheriff. The bill of exception (No. 10) fails to reveal that anything detrimental to appellant's case was found at any of those places save at the Central Hotel at Pecos where deceased's name and the assumed names in appellant's handwriting were discovered in the hotel register. Ham had testified that he went with the sheriff to the Central Hotel at Pecos and the sheriff was then permitted to testify what he found there. This transaction appears to be squarely within the principle announced in Marta v. State, 81 Tex. Cr. R. 135, 193 S. W. 202; Huey v. State, 81 Tex. Cr. R. 554, 197 S. W. 202; Willman v. State, 93 Tex. Cr. R. 77, 242 S. W. 747. Frequently testimony can be connected up in no other way. Ham could properly testify about all the places at which he, appellant and deceased stopped on their journey, and could relate the relevant incidents in connection therewith; he could also properly testify that he took the officer to these stopping places and the officer then could give evidence of discoveries there made. The statements of Ham to the officers as to what occurred at these places would, of course, be hearsay and could not properly be received in evidence either from Ham or the officer.

It is appellant's contention that the state failed to place him at the scene of the homicide by any evidence save that of the accomplice Ham, and therefore that the court was required to give an instructed verdict of not guilty. Upon this point we are referred to Boone v. State, 90 Tex. Cr. R. 379; 235 S. W. 580, Ross v. State, 104 Tex. Cr. R. 601, 286 S. W. 221 and Noble v. State, 100 Tex. Cr. R. 404, 273 S. W. 251. A review of these cases is not thought necessary. None of them is subject to the construction that the state is required to locate an accused at the place of the crime by other direct evidence than that of an accomplice. If such was the law the requirement as to the sufficiency of evidence to corroborate an accomplice would be meaningless. Regardless of any particular expression in the opinions referred to nothing was decided save that the evidence in those cases did not in the opinion of this court measure up to the requirements of the law. We entertain no doubt as to the evidence being sufficient in the present case, after a most careful and painstaking re-examination of the record.

On account of the severest penalty known to our law having been inflicted we have with much patience again reviewed the record and

must adhere to the conclusion announced in our original opinion that no error is found which in our judgment demands a reversal.

The motion for rehearing is overruled.

*Overruled.*

## ON APPLICATION FOR LEAVE TO FILE SECOND MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—By inadvertence a part of the argument of the district attorney of which complaint is made in Bill of Exceptions No. 35 was omitted in attempting to quote the argument in the opinion on motion for rehearing. The argument was in these words:

"The high points of the killing of Nixon are indelibly impressed upon that fellow and I do not believe he could keep from telling it, *not him (pointing at defendant). Ham couldn't keep from telling it.*"

The words omitted are italicized and their omission has been corrected. In reaching the conclusion stated in the opinion on motion for rehearing the argument quoted, as well as the surrounding facts, was given the most careful consideration of which the court is capable.

With the foregoing remarks the application to file a second motion for rehearing is overruled.

*Overruled.*