**Floyd Lee PATTERSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 40464.**

Court of Criminal Appeals of Texas.

June 21, 1967.

Don Metcalfe, Howard B. Law, D. B. Mason, Dallas, for appellant.

Henry Wade, Dist. Atty., Frank Watts, Tom Reese and Malcolm Dade, Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is Murder with Malice; the punishment, assessed by the jury at ninety-nine (99) years confinement in the Texas Department of Corrections.

Appellant was tried jointly with Willie Sewell in Criminal District Court No. 4 of Dallas County commencing on the 19th day of May, 1966. The Court charged the jury on the law of principals.

In his first ground of error, appellant contends that the trial court erred in failing

to charge on the law of circumstantial evidence.

The record reveals that the deceased, Leland Floyd Hendley, a forty-three year old white insurance agent, was making collections in an apartment area or complex in the northern part of the City of Dallas between 6:00 P.M. and 7:00 P.M. on February 15, 1966, when he was attacked and beaten. The Dallas Medical Examiner testified death resulted from multiple injuries and cerebral edema. Mrs. Lucille Bennett, who lived nearby, witnessed part of the attack upon the deceased at approximately 6:45 P.M., but was unable to identify the assailants except that they were colored males wearing trench coats. She related that when she first observed the attack, the deceased was on the ground and "they were strangling him". Upon her approach, the two assailants fled, and she expressed her amazement that in the dark they had been able to run under rather than into the nearby clothesline. A short time later after the police and an ambulance had been summoned, the deceased expired at the home of Mrs. Bennett.

Without any showing as to personal money the deceased may have had with him at the time, it was determined from insurance company records that the deceased had collected $136.09 on the day of his death.

On February 18, 1966, appellant and Willie Sewell were arrested.

Jackie Harris, a friend of both the appellant and Sewell, testified that the appellant entered a pool hall in East Dallas on the night of the offense between 7:00 P.M. and 8:00 P.M. and told him that he (the appellant) "had big money", and that he and Sewell "got an insurance man". Harris related the appellant gave him a dollar and paid Jarvis Smith a dollar to take him (appellant) home.

The following day, February 16th, Harris testified appellant returned to the pool hall with a new sweater and pants with his hair newly "processed".

Harris revealed that on February 17th, he saw Willie Sewell and asked him, " * * * did he do it?", to which Sewell replied, "Yes." Harris further testified, "I asked him (Sewell) if he knew the stud was dead and he said 'yes' and he said 'he was scared'. He told me him and Floyd had whipped the stud. He said Floyd damn near choked the stud to death". Harris said at the time Sewell had a pint of Gordon's and stated he had "paid for all of it".

The record also reflects that on February 17th, Willie Sewell, who was unemployed, but was a golf caddy on occasion paid $18.-31 for the hat he was wearing at the time of his arrest.

Maurice Coursey, a friend of the appellant for seven years, testified he saw the appellant at a bus stop on the night of February 17th and appellant stated "he had made some money off an insurance man". To appellant's statement, the witness Coursey replied, "Do you know the man died and you are in big trouble and you shouldn't be talking about it."

Charles Walker, another friend of the appellant and Sewell, saw appellant the day following the offense and related that appellant told him that he and Sewell had "made some big money"; that they had gotten "about $140.00", which had been divided between them. After this conversation, Walker, on February 17th, called Sewell on the telephone and asked to borrow money and testified that Sewell replied, "He didn't know Patterson (appellant) would be talking about the money.", and further that "him and Floyd had robbed an insurance man in North Dallas".

J. W. Thomas testified that on February 18th, in the presence of appellant and Sewell, he told Sewell that he had heard that Sewell and appellant had killed this insurance man in North Dallas. To this Sewell laughed and replied, " * * * he thought Floyd Lee was going to choke the

m▒▒▒▒▒▒ f▒▒▒▒▒▒ to death.", and that "* * * they like to have got caught.", and that "* * * later he went to this lady's house."

Neither the appellant or Sewell testified. Six witnesses were called on the issue of alibi. Such testimony, as well as other evidence in the record, reflects that Willie Sewell lived with his mother and stepfather approximately two blocks from the scene of the attack; that he was home most of the day of the offense; that the appellant was at such apartment with Sewell from 3:00 or 4:00 o'clock in the afternoon on such date until he got a ride to East Dallas at sometime after 6:30 P.M.

While alibi testimony placed Sewell at his home at the approximate time of the attack on the deceased, it also reveals that shortly thereafter he appeared at the apartment of Mrs. Bennett's son and daughter-in-law, and after observing flashing red lights, went with them to the apartment of Mrs. Bennett, the lady whose appearance on the scene had terminated the assault.

�they Appellant recognizes the well established rule that proof of an accused admitting or confessing to having killed the deceased is direct and not circumstantial evidence of the main inculpatory fact and a charge on circumstantial evidence is not required when proof of such admission or confession is in evidence. 4 Branch's Anno.P.C.2d 358, Sec. 2050; Cavazos v. State, Tex.Cr.App., 365 S.W.2d 178; Stevenson v. State, 169 Tex.Cr.R. 431, 334 S.W. 2d 814, 815. He, nevertheless, contends in view of his timely objection in writing to the Court's charge and the nature of the admissions that the Court erred in failing to charge on circumstantial evidence. He cites and relies upon Martinez v. State, 151 Tex.Cr.R. 316, 207 S.W.2d 387. In Martinez, it was held that the written confession of the accused was insufficient to make a case against him by direct evidence, and that a charge on circumstantial evidence should have been given by the trial

court. Though the accused Martinez confessed he had taken some turkeys there was nothing in the confession to show they were the same turkeys taken from the injured party or from his premises. The meaning of the Martinez case is clear that even though the accused confesses or admits to the commission of a crime, it must be shown by the evidence and the confession of the accused that the crime admitted is the same crime for which the defendant is being tried if the circumstantial evidence charge is not given. We adhere to the rule laid down in the Martinez case, but we cannot conclude that it is controlling in the case at bar. Each case must in a measure be tested by its own facts.

The statements made by Sewell and the appellant to their friends, while not in custody, clearly show that they robbed and killed an insurance man in North Dallas, though none of the statements identify the deceased by name.

These statements must be considered in light of all the other evidence presented. When this is done, it is shown that (1) the deceased was an insurance man; (2) the robbery-killing occurred in an area known as North Dallas; (3) the amounts of money taken and admitted were approximately the same; (4) that the deceased was choked or strangled, as appellant and Sewell admitted; (5) that they were almost caught, as they admitted; (6) that following the robbery-killing, Sewell went to the apartment of the lady, Mrs. Bennett, whose appearance had terminated the attack, and the very place where the deceased, Leland Hendley expired.

Taking all the facts together, we conclude that the trial court did not err in failing to charge the jury on the law of circumstantial evidence.

▒▒▒ We further note that the rule is well settled that if the facts proved are in such close juxtaposition to the main fact to be proved as to be equivalent to direct testimony, a charge on circumstantial evidence

is not required. 4 Branch's Anno.P.C. 359, Sec. 2050. Chapin v. State, 167 Tex.Cr.R. 390, 320 S.W.2d 341.

We further observe that in his timely presented written objection to the failure of the Court to charge on circumstantial evidence, appellant did not distinctly specify or call the Court's attention to his contention that the admitted statements or confessions of the appellant and Sewell were not sufficient to take the case out from under the circumstantial evidence rule as was done in Martinez v. State, supra. See Article 36.14, Vernon's Ann.C.C.P.

Appellant's first ground of error is overruled.

■ Appellant next contends the trial court erred in failing to grant a mistrial when the prosecutors, during jury argument, alluded to the failure of the appellant to testify during the trial.

We have carefully examined the three instances of which appellant complains. In the first, the prosecutor in his argument, referring to Jackie Harris having confronted both appellant and Sewell prior to their arrest, stated, "Now, this is one man who has talked to both of them, in this instance, on three different occasions, and not one denial from the lips of this man nor this man". In the second, the prosecutor while referring to Charles Walker's conversation with Sewell over the telephone and Walker's inquiry concerning Sewell and appellant having made some money, stated, "And what was his response? He doesn't deny it. Sewell doesn't deny it."

In each of the above instances, the Court overruled appellant's motion for a mistrial. The record clearly demonstrates that the argument complained of was made by the prosecutor while he was reviewing the admitted statements of appellant and Sewell which were in evidence before the jury. A reading of the argument complained of in context clearly reflects that the reference was to the conversations con-

cerning the admitted statements and not to appellant's or Sewell's failure to testify. No reversible error is shown. Lopez v. State, 170 Tex.Cr.R. 208, 339 S.W.2d 906; Howard v. State, 111 Tex.Cr.R. 205, 13 S. W.2d 80.

■ In the third instance complained of, the prosecutor in his closing argument, referring to appellant's argument that the State had failed to call one Davidson, stated:

"He said we haven't brought you this man Davidson. And I believe that Dr. Rose started to tell you what he had heard from Davidson and that drew an objection from the Defense. Of course, they can object to what Davidson said because that would be hearsay, but I'll tell you that they have the same right to subpoena people down here just like we do. If there's anything that they wanted you to hear, and believe me, they are experienced criminal defense attorneys—if there's anything that they wanted you to hear from any witness, they could have gotten him down here and put him on the stand."

It is clear that such was invited argument and referred to the defendant's failure to call a witness. Such argument did not constitute a comment on the failure of the defendant to testify. 1 Branch's Anno. P.C.2d 412, Sec. 393. The Court did not err in overruling appellant's motion for mistrial.

■ The remaining ground of error relates to the refusal of the trial court to grant a mistrial when the witness, Mrs. Lucille Bennett, was allowed to testify before the jury a second time after it was discovered the jury had not been sworn during her first appearance on the stand. Such action, appellant contends, deprived him of a fair trial by an impartial jury.

It appears that after Mrs. Lucille Bennett, the State's first witness, had completed her testimony, the jury was sworn for the first time in accordance with Article

35.22, V.A.C.C.P. After the State rested its case in chief, the State moved to re-open its case to re-introduce the testimony of Mrs. Bennett, or in the alternative, to avoid any possibility of re-emphasis to stipulate as to her testimony. Appellant refused to stipulate and the trial court over-ruled the appellant's motion for mistrial, and permitted the State to re-open to present Mrs. Bennett's testimony.

Prior to the presentation of Mrs. Bennett's testimony, a second time, the able trial court carefully explained to the jury the necessity of re-calling Mrs. Bennett, and properly admonished them the testimony was not being re-heard for emphasis.

The matter of allowing the State to re-open is discretionary and no abuse of the trial court's discretion is shown. Adams v. State, 154 Tex.Cr.R. 92, 221 S.W.2d 264.

It is observed that appellant again cross-examined Mrs. Bennett and inquired into matters not testified to during her first appearance on the stand.

We fail to see how the appellant was deprived of a trial by an impartial jury or of due process by the refusal of the trial court to grant a mistrial.

The judgment is affirmed.