PEDRO GARZA, JR., V. THE STATE.

No. 23315. Delivering April 17, 1946.
Rehearing Denied May 22, 1946.

The opinion states the case.

*Taylor, Cox, Wagner & Taylor,* of Brownsville, *Norris & Alaniz,* of San Diego, and *Roy A. Scott,* of Corpus Christi, for appellant.

*J. D. Todd, Jr.,* District Attorney, of Corpus Christi, *Lorimer Brown,* Assistant District Attorney, of Harlingen, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

Murder is the offense; the punishment, fifteen years in the penitentiary.

Do the facts warrant the conviction?

About ten o'clock on the morning of September 19, 1944, the deceased, Balderas, was in the hardware store operated by Newell in the town of Rio Hondo, and was standing near a counter engaged in a business transaction with Newell. A man, not otherwise identified in this record, approached Balderas and they shook hands, each using the left hand, after which the man stepped back one step and, from an automatic pistol held in the

right hand, fired three shots into the body of Balderas. Death followed shortly thereafter.

The killer fled through the front door of the store and across the street, a distance of eighty to ninety feet, and into the rear seat of a parked automobile, the door to which was already open and the motor running. Appellant and his brother were seated in the front seat of that automobile at the time. After the killer had gotten into the automobile, it was driven rapidly away by appellant. About a half mile down the road, the automobile, traveling at a high rate of speed in the direction of appellant's home, passed a filling station operated by one Escamilla. As it did so, an occupant of the car shouted to either Escamilla or to one Villarreal, standing nearby: "God damn, go pick your brother," or "Go get your brother." Appellant and his brother occupied the front seat of the automobile—appellant driving. A third man, whom Escamilla did not know, was in the rear seat. The evidence does not disclose whether the deceased was or was not related to Escamilla or to Villarreal; however, Escamilla did testify that he and deceased were friends.

Earlier the morning of and just prior to the killing, this same automobile was seen being driven by appellant along the street in Rio Hondo. His brother was on the front seat with him. In the rear seat was a man who was "mostly laying down * * *, facing towards the hardware store." Only a portion of the man's body was visible. The automobile was seen to come to a stop and park across the street from the hardware store and at the place where it was when the killer entered it after the killing. The man who was in the back seat was seen to get out of the automobile, cross the street, and go to the side of the store. The shooting followed one or two minutes thereafter.

None of the witnesses were able to identify the killer, nor did they attempt to give a description of him—that is, his size, age, or appearance.

The witness who saw the man leave the parked automobile and cross the street to the side of the store just prior to the shooting, expressed no opinion as to whether he was or was not the same man he saw flee from the store and into the parked automobile after the shooting. This witness, though examined at length by both the State and appellant, does not appear to have been interrogated relative to this important fact.

No motive is suggested for the killing. There is no evidence

of prior ill-feeling or animosity existing between any of the occupants of the automobile and the deceased. It appears that no word passed between the killer and deceased just prior to or at the time of the shooting.

According to the State's testimony, the killing was wilful, deliberate, unprovoked, and unjustified.

Upon the facts stated, the conviction is predicated. The appellant did not testify. He rested his case at the conclusion of the State's testimony.

The case was submitted to the jury, under the law of principals, Arts. 65 to 69, P. C.

It is the State's contention that: (a) appellant was present and, knowing the unlawful intent of the killer, aided him in committing the murder (Art. 66, P. C.); (b) appellant, while the murder was being committed, endeavored to secure the safety of, and means to assist the killer (Art. 67, P. C.); and (c) appellant advised and agreed to the commission of the murder and was present when it was committed. (Art. 69, P. C.)

If the facts are sufficient to authorize the jury to conclude that appellant was connected with the murder, under either or all of the propositions stated, the conviction should be sustained.

For one to be present at the commission of a crime by another, as that term is used under the law of principals, it is not necessary that the parties be in contact with or in the immediate presence of each other; immediate vicinity will, in some cases, suffice. See Hill v. State, 121 S. W. (2d) 996, and authorities there discussed.

Under the facts here presented, the conclusion is expressed that the appellant was present when the murder was committed. Mere presence, alone, however, is not sufficient to constitute one a principal to the commission of a crime by another; but presence together with knowledge of the unlawful intent of and aid to the perpetrator of the crime, or presence coupled with advice and agreement to the commission of a crime by another will constitute one a principal. Moreover, one is a principal to the commission of a crime by another if, while the crime is being committee, he endeavors to secure his safety or to conceal the perpetrator of the crime—whether he be present or not.

The case of Slay v. State, 33 S. W. (2d) 459, is deemed in point. There, the only fact connecting the accused with the robbery was that as the robber emerged from the building after having effected the robbery, the accused drove up in a car into which the robber stepped and in which they fled the scene of crime. Such fact, together with the further fact of flight before and after arrest, was held to be sufficient to constitute the accused a principal to the robbery.

The instant facts are very much like those in the Slay case, for, here, in addition to proof of the fact that the car appellant was driving was parked with door open and motor running, within eighty or ninety feet of the building where and when the murder was committed, the killer fled from the scene of the crime to and into the car which the appellant then drove away. In addition to those facts, we have, here, and not present in the Slay case, facts sufficient to authorize the jury to conclude that the appellant drove the killer to the scene of the murder and waited outside the building, with the purpose of furnishing him the means to escape after the crime had been committed—all of which tended strongly to show that there was a prior understanding and agreement between the appellant and the killer not only that the crime was to be committed but also as to appellant's part in that crime.

The conclusion is expressed, therefore, that the facts warrant the jury's conclusion of guilt.

Appellant, in his motion for new trial, claims jury misconduct, in that a member of the jury had an opinion relative to the case at the time he was selected as a juror; that during deliberations of the jury, he offered to acquaint the other jurors with the information he had and upon which he based that opinion, and was prevented from so doing by the foreman of the jury. Evidence was heard upon the motion, from which two conclusions are deducible, viz:

(1) There was no proof that the juror did, in fact, possess or have any such opinion at the time he was selected as a juror. Whether he did so or not rests upon the statement of the foreman of the jury that the juror so told him. The juror was not called upon to testify relative to the matter. (2) The uncontradicted testimony shows that the juror was not interrogated upon his voir dire examination and before he was selected as to whether he had an opinion relative to the case or acquaintance with the parties involved. The juror did not, if he in fact had

the opinion as charged, attempt to mislead or to conceal that fact from the appellant.

The fact that a juror has an opinion as to the case is not an absolute disqualification prohibiting him from serving as a juror upon the trial of that case. It might be the basis for a challenge for cause, which the accused could waive. McAnally v. State, 116 Tex. Cr. R. 322, 31 S. W. (2d) 443.

When appellant accepted the juror without inquiring as to whether he had an opinion in the case, he waived his right to challenge the juror or to complain because the juror did have such an opinion.

Appellant complains, in his motion for a new trial, of argument of State's counsel. No exception was made to the argment at the time it was made, nor is the matter presented here by a bill of exception. The complaint comes too late. Attesting authorities are numerous and will be found collated under Note 13, of Art. 667, Vernon's C. C. P.

No reversible error appearing, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

The motion for rehearing herein complains of the holding of this court on the sufficiency of the evidence, and presents the contention that there is no evidence to warrant the jury's finding: First, that the person who shot deceased was the same person who was riding in the back seat of appellant's automobile prior to the time of the shooting; second, that the person doing the shooting was the same person who walked from appellant's car to the implement shed at the side of the hardware store; third, that he was the same person who entered the appellant's car after the shooting; together with other facts necessary to connect appellant with the commission of the offense.

The man who did the killing and the deceased were Mexicans, as is the appellant. The circumstances of the case, as re-

vealed by the evidence, and the lack of motive on the part of the killer, are unusual. The facts proven are not completely satisfactory. Yet, careful reconsideration of the evidence leads us to the conclusion expressed in the original opinion. The hardware store, in which the killing took place, was separated from the cafe owned by J. M. Jones, the constable, by a shed in which implements were stored. Jones' testimony is to the effect that he had noticed appellant driving the car, with his brother in the front seat and a stranger in the rear seat. They had passed in front of the hardware store and were looking towards it. They then parked on the opposite side of the street, along the railroad right of way, in front of the store. The man in the back seat got out, walked across the street and into the implement shed at the side of the hardware store. Only a few minutes elapsed before he heard the shooting and, upon coming to the front of his cafe, a man coming out of the hardware store ran against him, went across the street, jumped in the car with appellant, who was at the wheel with the engine running and the door to the back seat open. This is the controverted point and we quote from Jones' testimony as follows: "Pedro Garza, Jr., the defendant sitting over there, and Nicholas Garza were in that car that man got into after he bumped me, and Pedro Garza, Jr., the defendant, was driving the car. After this man got into the car, they just took off, is all I can say; took off very fast. The defendant here was under the wheel, driving the car, and the man that was running and knocked me down got in the back seat. I noticed that the door to the back seat was standing open before he got to the car, and I noticed that the motor of the car was running at the time he got in." This man was not recognized by the witness.

The above evidence, considered with that of all the witnesses to the shooting who said that the killer came in the side door and left by the front door, would justify the jury in concluding that the party whom Jones saw get out of appellant's car and walk to the shed immediately before the shooting was the same man who entered the store. The fact that he emerged from the front instantly after the shooting, under all the circumstances described, and entered the car, justifies the further conclusion that the man who re-entered the car was the same individual. The evidence to the effect that appellant was driving the car before the shooting, remained at the wheel with the engine running and the door open, indicates that he understood and expected the killer's return, and is evidence of his aid in escaping from the scene.

The original opinion properly discusses the law, with appropriate authorities. As additional authority for the conclusion reached, we refer to Bass v. State, 127 S. W. 1020; Coffman v. State, 103 S. W. 1128; and Grimsinger v. State, 69 S. W. 583.

Appellant's motion for rehearing is overruled.