### ERNESTO MARTINEZ LOPEZ V. STATE

No. 31,371. June 25, 1960

Moion for Rehearing Overruled November 9, 1960

DAVIDSON, Judge, dissented.

*Tom Howard, Bill G. Thomas, Robert C. Benavides,* Dallas, for appellant.

*Henry Wade,* Criminal District Attorney, *James K. Allen, H. Dustin Fillmore, Ben F. Ellis, Jerome Chamberlain, Jr., Phil Burleson,* Assistants District Attorney, Dallas, and *Leon Douglas,* State's Attorney, Austin, for the state.

DICE, Judge.

The offense is murder; the punishment, death.

The state's evidence shows that the deceased, Jeanette Irene Mangan, who was 12 years of age, lived with her parents at 3257 Kingbridge Street in the city of Dallas. On the afternoon of December 31, 1956, the deceased left her home around 4:30 p.m. with her little 14-month old brother to go to a nearby grocery store. Shortly thereafter they were picked up by the appellant and Simon Rodriguez and the four drove to the home of Betty Snyder in appellant's automobile. Thereupon, the deceased got out of the car and went into the house with her brother. Betty then came out to the car in company with the deceased and her brother and talked to the appellant. After Betty had declined to go with the appellant, she returned to the house leaving the deceased standing by appellant's car holding her little brother in her arms. Around 5 p.m. Joe Pena observed the appellant and Rodriguez sitting in appellant's automobile which was parked in front of Rodriguez's home. Rodriguez got out of the car, went in the house, and returned with a bucket of water and some rags. Appellant and Rodriguez then proceeded to clean some blood from the back seat and floor board of the automobile. While in the back seat, Rodriguez loaded a .32 calibre pistol by putting two bullets in the clip. After they had cleaned the blood from the car, the appellant, Rodriguez, and Pena went for some beer and then rode around in the car. While they were riding, Rodriguez said to the appellant, "Let's go get the baby on Goat Hill and take it to some white people's porch," to which appellant replied that he did not want to go because he was scared. Later in the conversation, appellant told Pena that Rodriguez had killed a girl and they had left the girl up on Goat Hill with a baby who was with her. Later appellant drove half-way up the hill where Rodriguez got out of the car and appellant and Pena then drove to the house of Joe Medina some block and a half away. In approximately forty-five minutes, Rodriguez came to the Medina home and said, "it was terrible" and that the girl was still alive. Thereupon, the three left and Pena was taken to his house where he told his sister what had happened who then called the police.

The testimony shows that when the officers went on the hill they found the dead body of the deceased lying on its back against an embankment. When the body was found it was bloody and in the nude except for the deceased's socks and her blouse and brassiere which were pulled around her neck. Approximately 50 feet from the body two blood spots were found approximately

20 feet apart and between the two spots the deceased's torn underclothing and shoes were lying on the ground. A pair of blue jeans were lying on a bush some 50 feet from the nearest blood spot. No drag marks were found between the blood spots and where the deceased was lying on the ground. In the investigation, the baby brother of the deceased, covered with blood but apparently not injured, was found some 100 feet from the deceased's body.

Dr. P. O. B. Montgomery, Jr., whose qualifications as a medical legal pathologist was shown, testified that he examined the body of the deceased and that he found one gun shot wound which entered the body below the chin and had its exit at the back of the head which, in his opinion, was the cause of death of the deceased. The doctor testified that he also found that both jaws on the left side were broken which could have been caused by a blow with a fist. Dr. Montgomery further testified that his examination revealed injuries and tears to both the vagina and anus of the deceased and that in his opinion both had been penetrated by a male sex organ. Dr. Montgomery further testified that in his opinion the deceased was alive when both her vagina and anus were penetrated. He further stated that in his opinion the deceased did not die instantly from her injury and that her maximum survival time was 3 or 4 hours and the minimum survival time was between 20 and 30 minutes. The doctor further testified that he found no powder burns on the deceased's body and that the range of the wound was compatible with it being made while the deceased was lying down and the person who fired the shot was standing over her.

The testimony further shows that following his arrest, appellant made a written statement to the officers which was introduced in evidence by the state without any objection from appellant.

In his written statement appellant stated in part as follows:

"I am 19 years old." * * * On December 31, 1956, I was with a boy named Simon. I was driving my car. We were driving around and drinking some." * * * About 4:30 I saw a girl carrying a small baby. * * * I stopped and asked her about Betty." The girl said she guessed Betty was at home. I asked her to get in the car and go to Betty's house with us. She didn't want to go but I talked her into going. It took her about five minutes to make up her mind. We went to Betty's house and Betty wasn't at home. We looked for Betty for a while and couldn't find her. We went to

one of her friend's house and they told us Betty had gone back home. We went back to Betty's house. I talked to Betty who was there with her friend. Betty told me she counln't go with us because she had a date and she had to go take a bath. The girl that we picked up on Singleton asked me to take her back where we picked her up. When we got nearly back to where we picked her up, Simon jumped over in the back seat and told me to drive up on the hill, The girl said, 'Where are you taking me to?' And I said, 'Up on the hill.' and she said, 'Oh, no.' And Simon told me to go on and drive up on the hill. I drove up on the hill and got out of the car and walked away from the car. I stood out and away from the car for a few minutes. I heard one gun shot and walked up to the car and opened the door and I saw the girl with blood all over her face. The girl looked like she was shot in the face and blood was running out of her nose, and I said, 'What did you do that for,' And Simon said, 'She didn't want to get out of the car.' Simon was still holding his gun in his right hand with his hand down in his lap. Simon told me to take her out of the car I pulled her out of the car. Simon took the baby out of the car and laid it down beside her on the ground. He was standing within a few feet of her and I don't know whether the bullet hit her or not. We got in the car then and left."

Appellant did not testify but called his father as a witness, who testified in support of appellant's application for a suspended sentence.

The case was submitted to the jury under the law of principals as defined by Articles 65, 66, 67 and 69, V.A.C.C.P. and under the charge the jury was authorized to convict the appellant upon its finding from the evidence beyond a reasonable doubt that he "either acting alone or with Simon Rodriguez, Jr., as a principal" killed the deceased as alleged in the indictment.

In applying the law to the facts and submitting the issue of appellant's guilt to the jury the court instructed the jury that if they believed from the evidence beyond a reasonable doubt that while acting together as principals the appellant and Rodriguez had an original common intention and design between themselves to commit rape or assault with intent to commit rape, or sodomy, or anyone or more of such offenses upon the deceased, and in committing or endeavoring to commit such offenses they or either of them with malice aforethought killed the deceased by shooting her with a gun and at the time of such killing, the appellant was present, acting together with Rodriguez in furtherance of the common purpose or design, or though not actually and bodily

present was keeping watch so as to prevent the interruption of those engaged in carrying out the original common purpose and design and that the killing of the deceased was such an act as might have been or should have been contemplated by the parties would result from the execution of the original common purpose and design, then they would convict the appellant, etc.

The court further instructed the jury that if they believed from the evidence, or had a reasonable doubt thereof, that appellant did not assist or participate in the actual killing of the deceased, but that Rodriguez killed the deceased, and the killing was not in any way connected with their common purpose and design, if any, to rape, or assault with intent to rape, or commit the act of sodomy upon her and that the killing was without the knowledge or consent of appellant and was upon an independent impulse of Rodriguez and such killing was not such an act as might have been and should have been reasonably contemplated by the parties would result from their endeavor to execute the original common intent and design, then they would acquit the appellant and say by their verdict "not guilty."

The court also instructed the jury on the law of circumstantial evidence.

The charge, as given by the court, was a correct charge on principals under the statutes and followed the charge given in White v. State, 154 Tex. Cr. Rep. 489, 228 S.W. 2d 165 which is found copied in Sec. 654 at pages 727-732 of Erisman's Manual of Reversible Errors in Texas Criminal Cases. Appellant complains of the charge for the court's failure to instruct the jury on the law of accomplices and accessories. These are separate and distinct offenses from that of being a principal to a crime. Arts. 70 and 77, V.A.P.C. Under the court's charge appellant could only be convicted as a principal in the commission of the offense and could not have been convicted as an accomplice or accessory. In failing to so instruct the jury the court did not err.

Appellant also complains of the court's charge for failing to instruct the jury with reference to the law of exculpatory statements. It is first contended by appellant that such an instruction should have been given because his written confession which the state introduced in evidence was exculpatory because it showed that he was not present at the scene when the murder was committed. While appellant stated in his confession that he walked away from the car and returned after hearing a gun shot such statement did not show that he was not present when the de-

ceased was killed. For one to be present at the commission of a crime by another, as that term is used under the law of principals, it is not necessary for the parties to be in contact with or in the immediate presence of each other, as immediate vicinity is is sufficient. Hill v. State, 135 Tex. Cr. R. 567, 121 S.W. 2d 996 and Garza v. State, 149 Tex. Cr. R. 359, 194 S.W. 2d 406. It is next contended that such an instruction should have been given because the confession showed appellant's surprise when he returned to the car and asked Rodriguez "What did you do that for?" Such statement was not exculpatory as a matter of law and did not call for the instruction. Perez v. State, 160 Tex. Cr. R. 376, 271 S.W. 2d 281 and Mendez v. State, 168 Tex. Cr. R. 315, 327 S.W. 2d 454. The remaining purported exculpatory statement was elicited by appellant on cross examination of the state's witness, Pena, and a charge thereon was not required. Tate v. State, 139 Tex. Cr. R. 616, 141 S.W. 2d 351.

Appellant insists that the court erred in refusing to permit him to offer in evidence the written confession of his co-principal, Rodriguez, and to make proof that at the time of trial Rodriguez, was under indictment for rape of the deceased. Appellant relies upon the rule followed in circumstantial evidence cases which makes admissible the declarations of third parties admitting their guilt of the offense for which the accused is on trial. Appellant overlooks the fact that his co-principal Rodriguez had been tried and convicted for the murder of the deceased and sentenced to life imprisonment and was incompetent under the provisions of Art. 711, V.A.C.C.P. to testify as a witness for the appellant. Sommers v. State, 165 Tex. Cr. R. 575, 310 S.W. 2d 106. Rodriguez being incompetent to testify his writtten statement would not be admissible in behalf of the appellant. Alaniz v. State, 153 Tex. Cr. R. 374, 220 S.W. 2d 653. We are unable to agree with appellant that such proof was admissible under Art. 728, V.A.C.C.P. as being a part of any act or conversation given in evidence by the witness, Pena, upon examination by state's counsel. While Pena did testify relative to what Rodriguez said he found and did when he returned to the hill on the evening in question and such acts and observations were detailed by Rodriguez in his confession the state did not, in any manner, examine the witness, Pena, relative to the confession of Rodriguez.

Appellant insists that reversible error was committed by state's counsel in his opening argument to the jury when he stated "Now this defendant has not told you all that happened on top of that hill, we know that * * * ." Appellant insists that such statement was a direct reference to appellant's failure to testify in violation of Art. 710, V.A.C.C.P. The record reflects that ap-

pellant's objection to the argument was by the court sustained and the jury instructed not to consider the same but that appellant's motion for mistrial was overruled. The record further shows that the argument complained of was made by state's counsel while he was reviewing the contents of appellant's written statement which was in evidence before the jury and upon objection being made counsel stated to the court and jury that he was referring to appellant's statement "which is in evidence in this case." The explanation given by state's counsel clearly shows that he was referring to the appellant's written statement which was in evidence and not to the appellant's failure to testify. No reversible error is shown. See Howard v. State, 111 Tex. Cr. R. 205, 13 S.W. 2d 80.

The evidence shows the brutal killing of a helpless young girl and is sufficient under the court's charge to support the jury's verdict finding appellant guilty.

The appellant's written confession in which he detailed how he and his companion, Rodriguez, took the deceased up on the hill, together with other facts and circumstances, is sufficient to show an original common purpose and design between them to rape or commit sodomy upon the deceased, if not to murder her.

Appellant's written confession in which he stated that after they drove on the hill " * * * got out of the car and walked away from the car. I stood out and away from the car for a few minutes" was sufficient to warrant the jury in concluding that appellant was keeping watch while his companion, Rodriguez, committed rape and fired the fatal shot into the deceased's body.

The testimony of Dr. Montgomery that the range of the wound on the deceased was compatible with it having been made while the deceased was lying down and the person who fired the shot standing over her, together with appellant's written confession and the other facts and circumstances, was sufficient to warrant the conclusion that the deceased was shot after being taken out of the car and after appellant had returned to the car and was acting with Rodriguez.

Such were fact issues for the jury which were properly submitted to them in the court's charge.

In conclusion, we observe that by bill of exception it was shown that Rodriguez had been tried and assessed the punishment of life imprisonment. This information, of course, was not

made available to the jury who tried appellant. This court recognizes the inequity but has no power of clemency. We are bound by the facts and the law, and have found no error for which another trial should be ordered. Another branch of government will determine what shall be done, if anything, to bring about more equal justice in the matter of punishment.

The judgment is affirmed.

Opinion approved by the Court.

DAVIDSON, Judge, (dissenting).

Here is a case where two persons were charged with committing the same murder.

The one who actually comitted the murder, the one who actually fired the fatal shot, is first placed on trial. He is convicted and goes to the penitentiary. The other, this twenty-two-year-old appellant who the state admits did not actively participate in or commit the murder but says he is guilty because he aided the person who committed the murder, goes to his death in the electric chair. Yes, the man who actually commits the murder goes to the penitentiary, while the man who helped him dies in the electric chair!

It is difficult for me to understand that such is equal justice under law or that it is right as distinguished from wrong, as between men. If such it be, it is because the law so decrees and a jury has so decided. Whatever be the view, the fact remains that such an apparent inequity furnishes a good and sufficient reason why a conviction under such circumstances should be examined and inquired into with the purpose of determining whether the defendant received a fair and impartial trial under the law and whether the death penalty was assessed against him only after and as a result of such trial.

This case was tried upon the theory that appellant and Rodriguez entered into a common understanding and agreement to rape and commit the crime of sodomy upon the deceased and that the killing occurred during and while Rodriguez was engaged in carrying out or endeavoring to carry out that common agreement and design.

In applying that theory to the law, the trial court authorized the jury to convict appellant only if they believed (1) that ap-

pellant and Rodriguez entered into such agreement; (2) that Rodriguez killed the deceased by shooting her with a pistol while committing or endeavoring to commit the rape and sodomy; (3) that the act of shooting the deceased in the head was such that appellant might have or should have contemplated would result from the commission by Rodriguez of the rape and sodomy; (4) that the shooting of the deceased was such an act that both Rodriguez and appellant should have reasonably contemplated would result from the endeavor on the part of Rodriguez to execute the common design of rape and sodomy.

Under such instruction the jury convicted the appellant, under a general finding of guilt. The record does not reflect upon which state of facts the jury's finding was predicated.

Various exceptions were leveled at the court's charge, chief among which was that the evidence did not authorize the charge.

There is an utter lack of evidence showing any agreement, conspiracy, or design to rape and commit an act of sodomy upon the deceased. There were no witnesses who so testified. There were no witnesses to the transaction.

If there be any evidence of such agreement, conspiracy, or design, it must be found in appellant's voluntary confession. But that confession is wholly devoid of any statement of facts which would authorize such conclusion. Moreover, if appellant in the confession had so stated in so many words, there is no corroborating testimony thereof.

It must be remembered that it has always been the rule that the confession of the accused cannot, alone, establish the corpus delicti or the guilt of the accused or that an accused can be convicted upon his confession, alone.

There is, here, no testimony outside of or other than the confession of the appellant corroborative of any such agreement, conspiracy, or design having been entered into.

It follows that the evidence wholly fails to authorize the conclusion that Rodriguez and appellant entered into an agreement, conspiracy, or design that Rodriguez would commit an act of sodomy and rape upon the deceased. To say that such agreement is shown is to indulge in the rankest sort of supposition and speculation.

But the insufficiency of the evidence does not stop there. There is, equally, an absence of any testimony that the killing of the deceased occurred while Rodriguez was committing or endeavoring to commit the rape and sodomy as agreed upon, or that the parties to the agreement, conspiracy, and design should have contemplated that in the execution of or attempting to execute the rape and sodomy Rodriguez would kill the deceased by shooting her with a gun or that such killing would reasonably result from such agreement, conspiracy, or design.

To the contrary, the undisputed evidence, which the state placed in evidence when it introduced appellant's confession, shows that Rodriguez killed the deceased because she would not get out of the car. That testimony is not disputed by any other evidence in this case.

The killing, then, did not occur while Rodriguez was committing or attempting to commit rape or sodomy upon the deceased, as the state insists.

When the court affirms this case they necessarily hold as a matter of law that a conspiracy, agreement, or common design to rape and commit sodomy upon a female would result in the killing of the victim or that such would be reasonably calculated to so result. Such conclusion, either of fact or of law, is so utterly illogical and contrary to human experience as to be wholly without foundation. Yet the court so holds when they affirm this conviction.

In this connection, the fact must not be lost sight of that the killing of the deceased—that is, the firing of the shot that killed her—must have occurred prior to or during the commisssion of the rape and sodomy, for if the shooting occurred after the rape and sodomy had been consummated then the purpose of the conspiracy, agreement, and design had been accomplished and ended prior to the killing and could not have entered into or brought about the killing.

In affirming this case the court establishes as a rule of law that a conspiracy, agreement, or common design to rape and commit an act of sodomy embodies and carries with it the contemplation and notice that in the execution and commission of that agreement the victim will be shot in the head before or during the commission of the rape and act of sodomy.

I could never agree to such holding or proposition of law.

The evidence does show appellant guilty as an accessory to the murder of the deceased. Such an offense does not authorize the infliction of the death penalty as punishment.

Appellant asked that his guilt as an accessory to the murder of the deceased be submitted as an affirmative defense against the crime of murder. That charge should have been given.

Under this record, appellant should not pay the death penalty.

I dissent.

## ON MOTION FOR REHEARING

BELCHER, Judge.

We have carefully considered appellant's connections in the light of the record and remain convinced that the cause was properly decided on original submission.

The motion for rehearing is overruled.

Opinion approved by the Court.