Otis MINAFEE, Appellant,

v.

The STATE of Texas, Appellee.

No. 45082.

Court of Criminal Appeals of Texas.

June 21, 1972.

Rehearing Denied July 28, 1972.

Charles W. Tessmer, Ronald L. Goranson, Dallas, for appellant.

Henry Wade, Dist. Atty., William T. Westmoreland, Jr., Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal arises out of a conviction for robbery by assault where the punishment was assessed by the jury at 45 years.

At the outset, appellant challenges the sufficiency of the evidence to sustain the conviction.

Chris George, Manager of the Fair Park Liquor Store in the City of Dallas, testified that on the morning of May 28, 1968, he was robbed at gunpoint, tied up and placed in a back room; that the money taken from the cash register was in his care, custody and control, etc. On direct examination, he testified that two men participated in the robbery, but later admitted he saw only one of the men, whom he identified as the appellant. He based his belief that there were two on the noise and conversation he heard while in the back room.

George, who was 76 years of age at the time of the second trial of this case on April 7 and 8, 1970,[1] related that at a previous trial of this cause (which resulted in a hung jury), he had identified one Bernard Robertson,[2] appellant's brother-in-law, as the robber he saw in the store on the date in question.

Upon being recalled by the appellant, George stated: "I have always made—I'm not positive. Sure, I thought, and I believe, it was Minafee, but I—in clear conscience, I can't say yes or no."

William Gentry, owner of a store across the street from the liquor store, testified that at 10 a. m. on May 28, 1968, he walked to the liquor store to buy a package of cigarettes. He related that the appellant was standing behind the counter. When he inquired where "Pop" (George) was, the appellant stated that he had gone to get change and asked if he could help Gentry. As the appellant turned to get the cigarettes requested, Gentry noticed a revolver in the appellant's rear pocket. Returning to his store, he answered a phone call and before he finished, he observed police cars at the liquor store.

Officers testified that George had identified photographs of both the appellant and Robertson and that Gentry had selected appellant's photograph as a picture of the man he saw in the liquor store.

Testifying in his own behalf, appellant claimed alibi stating that he was working in his mother's cafe, where he normally went to work, between 9 and 9:30 a. m. He denied the offense, but admitted he had been previously convicted of murder without malice.

Appellant's mother testified that the appellant worked at her cafe from April until he was arrested in June, 1968, and while she could not particularly remember May 28th, she recalled that appellant worked every day (except Sunday) from 9 or 9:30 a. m. until closing time. Lois Minafee, appellant's wife, corroborated the fact that he usually went to work at 9 or 9:30 a. m. Henry Armstrong and Reuben McNeeley testified they ate lunch every day during May, 1968, at the cafe operated by appellant's mother, and the appellant was there every day about noontime.

Considering the evidence in the light most favorable to the jury's verdict, we conclude it sufficient to support the verdict.

1. The alleged offense was shown to have occurred on May 28, 1968. The indictment was returned on July 8, 1968. The first trial was conducted on March 12, 1969. The second trial was not conducted until April 7 and 8, 1970. The transcription of the court reporter's notes was not filed until April 9, 1971, a year later. A number of extensions were granted for filing briefs and the record was not received by this court until December 14, 1971. The first submission of this case was on June 7, 1972, over four years after the alleged offense. Surely some of the delay involved was avoidable.

2. The appellant was jointly indicted with Robertson, but only the appellant was on trial in the instant case.

■ Next, appellant contends the trial court erred in excluding evidence that impeached the testimony of William Gentry. He relies upon the rule that a witness may be impeached by prior inconsistent statements.

At the first trial, Gentry testified the man he saw behind the counter was 5′ 9″ or 5′ 10″ tall. At the instant trial, he testified that he was 5′ 6″ or 5′ 6½″ tall, and that he knew by observation that the appellant was shorter than he was. Gentry further testified he would have known "the robber" was shorter unless he was standing on something behind the counter.

The cross examination of Gentry reveals the following:

"Q Now, let me ask you this: When you went in and bought this package of cigarettes, were you standing face to face with the person behind the counter?

"A Yes, I was.

"Q Do you recall telling Officer Trammell shortly after the robbery that the man you saw behind the counter was six feet one or six feet?

"A I don't recall that.

"Q Are you saying that you didn't tell Mr. Trammell that?

"A I told him—as well as I remember —I don't remember what height I told him. I was rather excited at that time.

"Q Okay. It's possible that you did tell him that?

"A It's possible. That has been some time ago."

Officer Trammell was subsequently called by the appellant and testified he made a general offense report in which he made a notation as to Gentry's description as to the height of the suspect that Gentry had seen. He identified the report and when asked what it reflected as to the height description given by Gentry, the State's objection of "hearsay" was sustained. The report was proffered for "the jury's benefit" but such offer was denied,

to which action the appellant excepted, but the court permitted it to be introduced "for the purposes of the record." The informal bill of exception was not perfected by having Officer Trammell testify as to what description as to height was actually given by Gentry.

An extremely poor reproduction of the offense report is in the record before us. It reflects that Trammell talked to both George and Gentry. The description contained therein is of two suspects unidentified as to name and does not reflect the source of the height description in either case. There is no way that this court can determine which height description can be attributed to Gentry.

The appellant failed to elicit from Trammell, for the purpose of perfecting his bill of exception, a clarification of the report.

Under these circumstances, we perceive no error.

■ Next, appellant complains of the prosecutor's closing jury argument during the guilt stage of the trial. There, he argued,

". . . If you find this Defendant not guilty over here, you will be, in effect, saying that it's all right to go out and find you an old man and one that can't remember and one that will get confused, and rob him."

The record then reflects,

"MR. LAW: I object. I think he is twisting the meaning of the verdict—

"THE COURT: I'll sustain that. Sustained.

"MR. LAW: Ask to disregard his remarks.

"THE COURT: Disregard it.

"MR. LAW: Move for a mistrial.

"THE COURT: Overruled."

Such argument followed on the heels of the defense argument in great detail that the complaining witness's testimony had "no credibility" and "it's difficult to

begin with to get a clear picture of what he did tell you or what he can tell you. . . ."

It would, thus, appear that the argument was invited in part, at least. In light of the objection offered and the court's prompt action in sustaining the objection and instructing the jury to disregard, we cannot conclude that reversible error is reflected by the overruling of the mistrial motion.

■ Still further, appellant urges that the court erred in permitting the State to argue outside the record during the penalty stage of the trial. After arguing that neither "the facts of this case" nor the appellant had advanced any reason for leniency, the prosecuting attorney stated:

" . . . Now, I'm sure that you have had occasion to sit back in your living room and say, 'why don't they do something about it?' You've read the newspapers. 'Why don't they do something about this crime here in our country?' Well, you're 'they' and now's the time you can do something about it."

The general objection that the argument was "improper" was sustained and the jury was instructed to disregard the argument. The mistrial motion was denied. The argument appears to be a proper plea for law enforcement. See Langham v. State, 473 S.W.2d 515, 518 (Tex.Cr.App.1971). It does not appear to rest, as appellant contends, upon such an allusion of fact outside the record as to call for reversal. Further, in light of the court's action in sustaining the objection and instructing the jury to disregard, the remark was not so prejudicial as to warrant reversal.

■ Lastly, appellant contends the court committed reversible error in denying his motions to have him arraigned in the absence of the jury and having him arraigned in the presence of the jurors.

The 1965 Code of Criminal Procedure extended the requirement of arraignment to all felony cases and all misdemeanor cases punishable by imprisonment. Article 26.01, Vernon's Ann.C.C.P. It formerly was required only in capital cases. See former Article 491, Vernon's Ann.C.C.P. (1925). The legislative amendment was thought necessary since arraignment would be the first proceeding after formal accusation and the last point beyond which an indigent defendant should not advance without counsel or the waiver of the right to counsel. See Articles 26.04 and 28.01 § 1(1), Vernon's Ann.C.C.P.

It was one of the proceedings that the code provided could be disposed of by a pre-trial hearing. See Article 28.01, supra.

In discussing arraignment, this court in Boening v. State, 422 S.W.2d 469, 473, said:

" . . . Such arraignment, *not being a part of trial by jury*, is for the purpose of reading the indictment to the accused, hearing his plea thereto and fixing his identity. Article 26.02, V.A.C.C.P.; Steen v. State, 92 Tex.Cr.R. 99, 242 S.W. 1047. The time for such arraignment is prescribed by Article 26.03, V.A.C.C.P." (Emphasis supplied.)

Normally, unless arraignment is waived, it is the practice of most courts to see that arraignment occurs as early in the proceedings as possible.

The same contention raised by appellant was raised in Thompson v. State, 447 S.W. 2d 920, 922 (Tex.Cr.App.1969), and in Stewart v. State, 473 S.W.2d 495, 496–497 (Tex.Cr.App.1971). In *Thompson,* the record did not support the claim that arraignment occurred in the jury's presence and in *Stewart,* there was no objection and the contention was raised for the first time on appeal. In both cases, the court found no error presented.

In the instant case, the question was raised by written motions requesting the arraignment in the jury's absence. Both motions were overruled. The indictment was then read in the presence of the jury for the purpose of arraignment and immediately thereafter read again to satisfy the requirements of Article 36.01, Vernon's Ann.C.C.P.

The court erred in overruling appellant's motions. If the arraignment, not being a part of the trial by jury, had been delayed until a jury was sworn and impaneled, it should have been conducted in the jury's absence, particularly where the matter was called to the trial court's attention.

In light, however, of the totality of the circumstances and the court's instructions in its charge at the guilt stage of the proceedings that the indictment was not to be considered as any evidence of the appellant's guilt, we conclude that no reversible error is presented by the double reading of the indictment and the entry of the same plea.

■ The practice of delaying arraignment and conducting such proceedings in the jury's presence should not be condoned. Trial judges should be careful to avoid such practice.

Finding no reversible error, the judgment is affirmed.