**Mark Allen WOOD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 48510.**

Court of Criminal Appeals of Texas.

Nov. 6, 1974.

Rehearing Denied Nov. 27, 1974.

Robert B. Maloney and David L. Loving, III, Dallas, for appellant.

Henry Wade, Dist. Atty. and W. T. Westmoreland, Jr., Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal is taken from a conviction for murder with malice, wherein the jury assessed the punishment at life imprisonment.

Initially, appellant contends the trial court erred in arraigning him in the presence of the jury over timely objection.

In Minafee v. State, 482 S.W.2d 273 (Tex.Cr.App.1972), this court said:

"The practice of delaying arraignment and conducting such proceedings in the jury's presence should not be condoned. Trial judges should be careful to avoid such practice." See also Boykin v. State, 487 S.W.2d 128 (Tex.Cr.App. 1972); Winkle v. State, 506 S.W.2d 891 (Tex.Cr.App.1974).

This court, however, has refused to reverse where there has been no showing that the arraignment was actually conducted in the presence of the jury, Thompson v. State, 447 S.W.2d 920 (Tex.Cr.App. 1969), or where there was no objection made to such improper procedure, Stewart v. State, 473 S.W.2d 495 (Tex.Cr.App. 1971); Roberts v. State, 493 S.W.2d 849 (Tex.Cr.App.1973); Willis v. State, 493 S.W.2d 170 (Tex.Cr.App.1973); Winkle v. S.W.2d 170 (Tex.Cr.App.1973); Winkle v. State, supra. And on occasion we have found no reversible error when the totality of the circumstances was considered including the court's instructions at the guilt

stage of the trial that the indictment was no evidence of guilt. Minafee v. State, supra. Cf. also Gonzales v. State, 500 S.W. 2d 154 (Tex.Cr.App.1973).

■ Just why, however, some trial judges persist in this condemned practice is difficult to understand. Arraignment is not a part of trial by jury, Boening v. State, 422 S.W.2d 469, 473 (Tex.Cr.App. 1967), and is one of the proceedings that can be disposed of by a pre-trial hearing. See Article 28.01, Vernon's Ann.C.C.P. The purpose of arraignment is to read the indictment to the accused, hear his plea thereto and fix his identity, Article 26.02, Vernon's Ann.C.C.P., and it usually is the point in the criminal proceedings at which the trial court determines if the accused has counsel and if appointment of counsel is necessary. Therefore, unless arraignment is waived, most careful trial judges make every effort to see that arraignment occurs as early in the proceedings as possible.

The very purpose of arraignment has already been served in most instances when arraignment is delayed until after both sides have announced ready at the trial on the merits and a jury has been selected and sworn. When arraignment is so delayed, it is usually an oversight or an omission and then is performed merely because the statute (Article 26.01, Vernon's Ann.C.C.P.) requires the same. This is no justification for conducting the arraignment in the presence of the jury. Further, any inadvertent remark or innocent inquiry, etc., in the jury's hearing might easily become the basis for a mistrial.

In the instant case appellant contends the arraignment (Article 26.01, supra) and the second reading of the indictment before the jury to satisfy the requirements of Article 36.01, Vernon's Ann.C.C.P., repetitiously chips at the presumption of innocence. He contends that no "form" jury

instruction to the effect that the indictment is no evidence of guilt can remove the psychological effect of the repetition upon the jury.

Appellant charges that this court will apparently tolerate any extreme in the manner in which arraignment is conducted so that the matter will continue to be only within the whim of each individual trial judge. This we readily disclaim, for there may be many instances where the manner of the arraignment in the jury's presence may prejudice the rights of the accused.

■ In the instant case while the indictment was read twice in the presence of the jury, the plea entered each time was "not guilty," and the record does not reflect that any extended remarks, etc., were made that might have prejudiced the appellant, particularly in light of the court's subsequent instruction to the jury that the indictment was no evidence of guilt. Considering the totality of the circumstances, no reversible error is shown.

■ The practice of arraignment in the jury's presence is, however, again condemned and should not be permitted regardless of the plea.[1]

Appellant also challenges the sufficiency of the evidence to sustain his conviction.

The record reflects that near midnight on April 3, 1972, Officer John Palich of the Mesquite Police Department, while on patrol alone, heard a radio dispatch concerning an "attempted burglary" in the area and the flight from the scene by three white males. He later learned that one of the three had been apprehended. He participated in the search of the area for those who had escaped. At the time he did not know whether any items had been stolen. Several hours later, about 3 a.m. on April 4, 1972, Officer Palich, still alone, observed a 1963 Ford Fairlane automobile run a stop sign at the intersection of Hyde

1. In the instant case the trial judge indicated it was his practice to arraign outside the jury's hearing if the plea was "guilty," but if it was "not guilty," the arraignment took place in the jury's hearing.

Park and Interstate 30 in Dallas County, eight-tenths of a mile from the scene of the attempted burglary. He stopped the vehicle for the traffic violation and discovered the same was occupied by two white males and was being operated by Russell Glen Tores, who produced his operator's license.

The appellant Wood was a passenger sitting in the front seat. During the course of the conversation with Tores, the officer observed by the light of his flashlight that the appellant appeared to be having difficulty keeping his eyes open[2] and he formed the opinion that the appellant was under the influence of alcohol or drugs. The appellant was unable to produce any identification at the officer's request, although Tores quickly and voluntarily interjected that the appellant had lost his operator's license the preceding day. The officer requested the appellant to get out of the vehicle, which he did, and he walked to a position near the front of the police vehicle. He was unkempt had on an Army jacket-type blouse which extended below his waist and still appeared to be intoxicated on alcohol or drugs. Officer Palich observed that the appellant was aware of his movements when he placed his hands on his service pistol, which he explained he did for his own safety as it "is a very dangerous time when a person is alighting from the vehicle in any traffic situation at that time of night." Further, the officer testified that appellant's Army type blouse hung down to his thighs so the officer could not observe his waistband to determine if appellant was armed and he searched the appellant for weapons for his own protection.

Officer Palich had the appellant place his hands on the police vehicle and patted him down, feeling in one pocket what seemed to be the handle of a knife. He removed the same from the lower left

pocket of appellant's blouse and found it to be three rolls of coins and a number of loose bills totaling $108.00. He then radioed for assistance and began a search of the Ford automobile, finding a .45 caliber pistol under the driver's seat which appeared to have been fired recently, and found a .22 caliber revolver pistol in a well between the passenger seat and passenger door. As Officer Palich was searching the vehicle Officer Ron DeLord arrived, warned the arrested twosome of their rights, handcuffed them and placed them in Palich's police vehicle. Palich took them to jail.

DeLord remained with the Ford to await the arrival of a tow truck. As he waited he was approached by a white male in an automobile. As a result of a conversation with such motorist DeLord went to a Texaco service station located about 100 feet away and found the cash register standing open and a small metal card file box overturned on the desk. In one of the service bays he found the deceased, George Youngblood, in a semi-sitting position bleeding from wounds in the head. There was no pulse. An ambulance was called. DeLord knew the deceased service station attendant was alive and well 30 minutes before, for he had talked with the attendant at that time.

Subsequent investigation revealed Tores' fingerprints on the metal file box and two spent .45 caliber cartridge cases in the service bay. A .45 caliber bullet was removed from the deceased's head, and it was determined such bullet had been fired by the .45 caliber pistol recovered in the search of the Ford. The prints, shells and the bullet were received into evidence.

The autopsy revealed that death was caused by wounds to the head. One wound was inflicted by the said .45 caliber pistol and from the other smaller wound no bullet was recovered as it was a "through and through" wound.

---

2. On the hearing on the motion to suppress evidence the officer testified that appellant's speech was "somewhat slurred and that he answered more or less in guttural tones of uh huh or huh uh."

The service station owner's wife, who acted as bookkeeper, testified $108.17 was missing from the station, and she made positive identification of the two rolls of pennies taken from the appellant, for the rolls had some writing on them which appeared to be domino scores.

The appellant offered no testimony, and the court charged on the law of principals and circumstantial evidence.

■ We deem the evidence clearly sufficient to sustain the conviction.

In two grounds of error appellant complains of the admission into evidence of the $108.00 found on his person, as well as the admission of the .45 caliber pistol and .22 caliber revolver. He contends that all of these items were found as a result of an illegal search and seizure in violation of the Fourth Amendment to the United States Constitution and Article I, Sec. 9 of the State Constitution, Vernon's Ann.St.

The record relating to the search and seizure was not developed as well as it might have been, which always increases the burden upon the appellate court in passing on the grounds of error presented. Cf. Keah v. State, 508 S.W.2d 836 (Tex. Cr.App.1974). The record does reflect the following: Officer Palich, on night patrol alone, had participated on the date in question in the search for two white males who had fled from the scene of an attempted burglary or a possible burglary. As far as Palich knew, no one had checked out the building involved to determine if entry had been made or if anything had been stolen. About 3 a. m. and eight-tenths of a mile from the scene of the attempted or possible burglary, the officer observed the driver of a Ford automobile run a stop sign. He testified he stopped the vehicle as a result of such violation, as he had a right to do. See Article 6701d, Secs. 91A, 153, Vernon's Ann.C.S. While examining the operator's license of the driver Tores, he observed by the light of his flashlight the appearance of the appellant, a passenger in the vehicle, who appeared to be under the influence of alcohol or drugs. The appellant's speech was slurred and he had no identification. The driver, apparently concerned, quickly offered the explanation the appellant had lost his driver's license the previous day. The appellant was asked to get out of the car, and when he did, the officer was still of the opinion he was under the influence of alcohol or drugs.[3] Appellant was wearing a thigh length Army jacket, and the officer could not see his waistline to see if he was armed. The officer observed the appellant carefully watching his movements, and for his own safety under the circumstances he patted down the appellant and felt what he thought was the handle of a knife. He removed the same and found it to be three wrapped rolls of coins and a number of loose bills totaling $108.00 stuffed into a jacket pocket. He then radioed for assistance and then looked under the driver's seat of the Ford and found a .45 caliber pistol and then discovered a .22 caliber revolver near the passenger's seat.

■■ The Fourth Amendment has been held not to require a policeman who lacks a precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow crime to occur or a criminal to escape. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Circumstances short

---

3. Public drunkenness is proscribed by Article 477, Vernon's Ann.P.C., and streets and highways have been held to be public places. Floyd v. State, 488 S.W.2d 830 (Tex.Cr.App. 1972); Walker v. State, 171 Tex.Cr.R. 379, 350 S.W.2d 561 (1961). Further, it is well established that a peace officer has the right to make a warrantless arrest of one found intoxicated in a public place. Cook v. State, 155 Tex.Cr.R. 580, 238 S.W.2d 200 (1951);

Rent v. State, 160 Tex.Cr.R. 326, 268 S.W. 2d 674 (1954); King v. State, 166 Tex.Cr.R. 231, 312 S.W.2d 501 (1958); Johnson v. State, 397 S.W.2d 441 (Tex.Cr.App.1965); Chamber v. State, 416 S.W.2d 826 (Tex.Cr. App.1967).

Further, Article 725c, Vernon's Ann.P.C. 1925, in effect at the time, prohibited a person being under the influence of narcotic drugs.

of probable cause for arrest may justify temporary detention for investigation and questioning. Baity v. State, 455 S.W.2d 305 (Tex.Cr.App.1970), cert. denied, 400 U.S. 918, 91 S.Ct. 180, 27 L.Ed.2d 158. Thus, neither tests of reliability demanded for showing of probable cause nor showing of probable cause is required to justify an investigative stop. United States v. Rollerson, 491 F.2d 1209 (5th Cir. 1974). A brief stop of a suspicious individual in order to determine his identity or to maintain status quo momentarily while obtaining more information may be reasonable in light of facts known to the officer at the time. Adams v. Williams, supra.

■■ The purpose of a limited search after investigatory stop is not to discover evidence of crime, but to allow the peace officer to pursue investigation without fear of violence. So long as the officer is entitled to make a forcible stop and has reason to believe that the suspect is armed and dangerous, the officer may conduct a weapons search limited in scope to the purpose of enabling the officer to pursue investigation without fear of violence. Adams v. Williams, supra. United States v. Mulligan, 488 F.2d 732 (9th Cir. 1973).

Much of this was first stated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), when the United States Supreme Court wrote:

"In view of these facts, we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of

physical harm." See also Lewis v. State, 502 S.W.2d 699 (Tex.Cr.App.1973).

■ The record in the instant case evidences the action of a peace officer, who in the course of an investigation had to make a quick decision on the scene as to how to protect·himself and took limited steps to do so. The facts detailed reflect that a reasonably prudent man would have been warranted in believing the appellant was armed and presented a threat to the officer's safety while investigating the suspicious behavior described. Cf. Keah v. State, supra. The search was strictly circumscribed by exigencies which justified its initiation. Terry v. Ohio, supra.

■ In this connection it is observed that an occupant of an automobile is just as subject to a reasonable stop and to a reasonable frisk as is a pedestrian. Adams v. Williams, supra. It is observed that the search of appellant's person was limited to a "pat down," and such limited search revealed the money described after the officer felt what he believed to be the handle of a knife. Such evidence thus obtained was clearly admissible. The officer then searched under the seats of the Ford automobile, which appeared to be within four or six feet from the appellant and his companion. The record does not reflect that the same was a general and exploratory search, but one limited to a search for weapons for the officer's protection. The area which the police may search for potential weapons in frisk situations is the same as that area which the police may search when making a search incident to a lawful arrest, and is the area within the lunge, the grasp or the reach of the suspect or suspects. Williams v. State, 19 Md.App. 204, 310 A.2d 593 (Maryland Court of Special Appeals—1973). Compare Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) involving scope of search incident to arrest. We conclude the search which produced the guns was thus valid, and the same was ad-

missible in evidence. It would be difficult to say that the officer's search of appellant's person and search of the car for weapons for his own protection and to prevent escape were unreasonable under the circumstances.

Under the circumstances described we need not decide whether there was also probable cause for the arrest of the appellant for public drunkenness or for being under the influence of drugs or whether an arrest under the provisions of Article 14.-03, Vernon's Ann.C.C.P.,[4] was justified, and whether the search incident to such arrest or arrests was valid.

Appellant relies heavily upon Murphy v. State, 378 S.W.2d 73 (Tex.Cr.App.1964). *Murphy* is distinguishable on its facts. There, the defendant was a passenger in a vehicle which had been stopped as a result of a traffic violation and was pulled from the car after she failed to respond to a question and a request to get out of the car. After she was pulled from the car her purse was taken from her and later a search of the same at the police station revealed dangerous drugs, the possession of which she was convicted for. The State relied upon the officer's testimony that the defendant was drunk and he had arrested her for such offense and searched incident thereto, but this court found the officer had formed his opinion as to drunkenness based on observations after she was pulled from the car and placed under arrest. In the instant case the officer formed the opinion the appellant was under the influence of alcohol or drugs before he got out of the car and again after he got out of the car and prior to any "pat down" of his person.

■ Next, appellant contends the court erred in overruling his written objection to the court defining "presence," urging that

such definition constituted a comment on the weight of the evidence. The objected to charge reads as follows:

"You are further instructed with reference to the word 'presence' as used in the charge above on principals that the term 'presence' under the law of principals relating to persons present at the commission of an offense by another does not refer to contact with or being in immediate presence of the other, and that immediate vicinity is sufficient."

Appellant concedes that Lopez v. State, 170 Tex.Cr.R. 208, 339 S.W.2d 906 (1960), is authority for the court's charge,[5] but contends that in *Lopez* there was a confession which showed Lopez to be present or in the immediate vicinity when the deceased was killed. He argues that the use of the words "immediate vicinity" to define "presence" was a comment on the weight of the evidence, in violation of Article 36.14, Vernon's Ann.C.C.P. He urges that the evidence merely shows that appellant was arrested nearby or in the "immediate vicinity" of the station where the deceased was found and nothing to show where he was when the offense was committed. He advances the theory that the use of "immediate vicinity" overemphasized the location of appellant's arrest, and essentially told the jury that the arrest near the station was sufficient to show the appellant's presence at the scene of the offense, inviting the jury to speculate in a circumstantial evidence case.

We do not agree. After a very careful and detailed instruction on the law of principals, the court did define "presence" as set forth above, but the court also added the following:

"In connection with the term 'presence' you are further instructed that the mere presence of a defendant at the

4. Article 14.03, Vernon's Ann.C.C.P., provides:

"Any peace officer may arrest, without warrant, persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace, or

threaten, or are about to commit some offense against the laws."

5. See also Hill v. State, 135 Tex.Cr.R. 567, 121 S.W.2d 996 (1938) ; Garza v. State, 149 Tex.Cr.R. 359, 194 S.W.2d 406 (1946).

scene of an alleged offense would not constitute him a principal but in addition to his presence at the scene of an alleged offense all of the other requirements set out above in the definition of the word 'principal' must exist under the facts of the case in order to warrant that such defendant is a principal, and if the jury should have a reasonable doubt as to the existence of any of the said requirements set out above in order to constitute him a principal then the jury should find that the defendant is not a principal."

In light of the charge as a whole we do not conclude the court erred in overruling appellant's written objection to the charge. See Article 36.19, Vernon's Ann.C.C.P.

The judgment is affirmed.

ODOM, J., concurs in the result.

DOUGLAS, Judge (concurring).

I concur in the result reached that the arraignment in the presence of the jury under the circumstances of this case is harmless error.

Further, the result reached concerning the search of the automobile is correct. However, it should be noted that the car was stopped because of a traffic offense and the appellant was a passenger outside the automobile when the search was made. In Wilson v. State, 511 S.W.2d 531, this Court, in the majority opinion, held that a search of an automobile after the arrest of the driver for a traffic offense was unauthorized even though the accused had made a gesture toward the location of the contraband before he was arrested. The distinction between this case and the Wilson case is too fine. When an arrest has been made, an officer for his own protection should have the right to make the search even if it was for a traffic arrest at night.

In the present case, the driver, appellant and the other passenger were outside the car when it was searched. If the officer planned to take appellant and the others to jail, there was no better reason to search the car than the car in the Wilson case and the reasoning that it was for the safety of the officer.

When an officer makes a search after a legal arrest, he decreases the chances of being harmed. The legality of the search should not depend merely upon the officer's statement that he was in a possibly dangerous situation. In the Wilson case there was no testimony that the officer was afraid that he might be harmed. That case was reversed on the ground that the search was illegal. In the present case the officer testified, "It is a very dangerous time when a person is alighting from the vehicle in any traffic situation at that time of night." This is common knowledge, but the Wilson case was reversed because there was no testimony about this obvious fact, and it should be overruled. See the dissenting opinions in Wilson v. State, supra. The fact that one officer says it is a dangerous situation in one case and the officer in another case does not say so should not be the difference between an affirmance and a reversal. The Wilson case should be overruled.