Eustacio **PEREZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 64395.

Court of Criminal Appeals of Texas, Panel No. 2.

Oct. 22, 1980.

Rehearing Denied Dec. 10, 1980.

---

Joseph A. Connors, III, Fidencio M. Guerra, Jr., McAllen, for appellant.

Robert J. Salinas, Dist. Atty., pro tem and Leslie E. Reed, E. Daniel Ramirez, Jr. and Theodore C. Hake, Asst. Dist. Atty., pro tem, Edinburg, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, PHILLIPS and W. C. DAVIS, JJ.

## OPINION

DOUGLAS, Judge.

Perez was convicted, upon a plea of guilty, of aggravated rape. The court assessed punishment at life.

Appellant now contends that insufficient evidence was adduced to prove that Perez caused serious bodily injury to the victim as alleged in the indictment. Appellant concedes that after he and his partner had raped the victim, a seven–year–old girl, his partner killed her. Appellant further concedes that the murder was committed in the course of the same criminal episode as the rape of the child, and that all the elements of V.T.C.A., Penal Code, Section 21.03(a)(1), defining aggravated rape are therefore present.

Appellant's contention is that since his partner, and not he, committed the aggravating elements, he himself is guilty only of rape. This contention is answered by V.T.C.A., Penal Code, Section 7.02(b), which provides that:

"If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy."

Appellant should have anticipated the silencing of the victim of and sole witness to the brutal rape of a seven–year–old child. The evidence of aggravation is ample; the ground of error is overruled.

Perez also contends in several grounds of error that the admission of his oral confession and three written statements was erroneous. Appellant bases his contentions upon his claimed failure to have been properly warned of his rights and the claim that the conditions of his arrest and incarceration led to the involuntary giving of the statements.

Officer Carlos Watts testified that he was approached at the police station the morning of August 17, 1978 by Emiliano Sierra, who reported the disappearance of his seven–year–old daughter–Rosa Maria Sierra.

Acting upon information given by Sierra, Watts and his partner proceeded with Sierra to the Ring Ranch, where appellant, who was a neighbor of Sierra, was then employed. At about noon, Watts and his partner located appellant.

Watts explained to appellant that he was investigating the disappearance of Rosa Maria Sierra, and asked if appellant would accompany him to the Mercedes police station to answer questions in that regard. Perez agreed to accompany Watts in the officers' car.

The officers, appellant and Sierra arrived at the Mercedes Police Department about one o'clock in the afternoon. Watts then advised appellant of his *Miranda* rights. Perez gave no indication that he wished to contact an attorney or to remain silent. He refused the offer to make a telephone call.

Watts then questioned appellant of his whereabouts the night before. Appellant stated that he had been at the Citrus Lounge, near Ring Ranch, until about midnight and had returned to the ranch to sleep. Watts and his partner then asked if appellant was willing to wait for them to check out the story and return, and appellant agreed.

Appellant was placed in the booking room, where, according to the testimony of Lieutenant Jorge Castillo, he was fed twice before the officers returned after 10:00 p. m.

Upon their return, the officers told appellant what they had been told by Reyes Silguero, owner of the Citrus Lounge, and Perez responded by saying, "I am going to tell you what happened."

Perez then led the officers to the body of the victim and gave an oral statement implicating himself and Silguero in the abduction and rape of the victim and naming Silguero as her murderer.

Upon the discovery of the body, Justice of the Peace Apoliano Guitierrez was summoned to the scene to declare the victim dead. The officers then took Perez to Guitierrez' office, where Guitierrez gave Perez a magistrate's warning and issued warrants for the arrest of Silguero and Perez. Because only he knew its location, Perez accompanied the officers to Silguero's house to serve the warrant. The officers and Perez arrived back at the Mercedes Police Station at about 5:30 a. m.

Later that morning Perez agreed to give the police a written statement. Before taking the statement, Officer Watts again warned Perez of his *Miranda* rights.

Appellant now contends that the oral and written statements were not given voluntarily, and should therefore have been suppressed. That contention is based upon Perez' own testimony, in which he alleged, among other things, that he was not fed during the time he was at the Mercedes Police Station before he gave his oral statement.

The trial judge is judge of the credibility of the witnesses. He had an opportunity to observe their demeanor, and was entitled to believe Officer Watts and to disbelieve the appellant.

The appellant was repeatedly warned of his constitutional rights. He did not give his original statement as the result of long interrogation but as a spontaneous reaction to hearing of Silguero's interview. The court did not err in finding the oral statement and first written statement voluntary.

■ Appellant also contends that the court erred in finding that Officer Watts speaks Spanish and properly translated appellant's statement in setting it down.

Officer Watts testified that he spoke with Perez in Spanish, and that he accurately translated both the *Miranda* warnings and Perez' statements. Counsel for appellant did object to the reading of the warnings into the record of English, but, in cross-examining Watts, neither requested that he demonstrate his ability in Spanish, nor impeached that ability, nor asked Watts to recall in Spanish any of the conversations or statements; neither did he offer any evidence that the statements were not in fact as given.

Without any evidence offered to controvert Watts' testimony, the court was within its discretion in finding that Watts correctly warned Perez in Spanish and correctly translated Perez' statements.

■ Perez also contends that his second and third written statements were involuntary and erroneously admitted. Although the voluntariness of those statements is also supported by Watts' testimony, it is sufficient to note that, assuming arguendo that the later statements should have been excluded, the error was harmless beyond a reasonable doubt. The oral and first written statements provide ample proof in support of the guilty plea.

■ In his final ground of error, appellant contends that his guilty plea was coerced by the rulings upon the admissibility of his confession which were made while capital charges were pending.

Choosing to plead guilty to a lesser offense rather than to risk a capital conviction is a tactical decision. There is no evidence in the record that the choice was coerced by error or overreaching. We will not hold the State responsible for the uncomfortable circumstances appellant created for himself.

The judgment is affirmed.

PHILLIPS, Judge, concurring.

I cannot agree with the majority that a defendant who is a party to a rape necessarily should anticipate that his partner will murder the victim to prevent her from becoming a witness. Without some evidence that the partner manifested homicidal tendencies, e. g. wielded a deadly weapon previous to the commission of the rape or spoke of silencing the anticipated victim, I would hold the evidence insufficient to show that the defendant was guilty of aggravated rape under the law of parties set forth in V.T.C.A. Penal Code, § 7.02(b). Judge Davidson argued the point admirably in his dissenting opinion in *Lopez v. State*, 170 Tex.Cr.R. 208, 339 S.W.2d 906, 912–913 (1960):

> When the court affirms this case they necessarily hold as a matter of law that a conspiracy, agreement, or common design to rape and commit sodomy upon a female would result in the killing of the victim or that such would be reasonably calculated to so result. Such conclusion, either of fact or of law, is so utterly illogical and contrary to human experience as to be wholly without foundation. Yet the court so holds when they affirm this conviction.

\* \* \* \* \* \*

In affirming this case the court establishes as a rule of law that a conspiracy, agreement, or common design to rape and commit an act of sodomy embodies and carries with it the contemplation and notice that in the execution and commission of that agreement the victim will be shot in the head before or during the commission of the rape and act of sodomy.

I could never agree to such holding or proposition of law.

In the present case there is nothing to show that appellant should have anticipated that Silguero would murder the victim. In his second confession (the validity of which is questioned) appellant states that he saw a chrome wrench in Silguero's back pocket when Silguero took the victim from the car. However, appellant does *not* state in the confession that he saw the wrench previous to the commission of the offense. By the time appellant saw the wrench, the two men already had kidnapped the victim and appellant had raped her.[1] There is absolutely no evidence that Silguero planned or even contemplated the murder in advance of committing the rape. The evidence is insufficient to satisfy § 7.02(b), supra.

Although I vigorously disagree with the reasoning of the majority, I agree with the result it reaches. The record reflects that appellant orally stipulated that the offense alleged in the information "was committed in the County of Hidalgo, State of Texas, on the dates, *and in the manner alleged.*" Under our case law this stipulation by itself is sufficient to support appellant's conviction. *Dinnery v. State*, 592 S.W.2d 343, 352–354 (Tex.Cr.App.1980, Opinion on Rehearing); *Potts v. State*, 571 S.W.2d 180 (Tex.Cr.App.1978); *Cevalles v. State*, 513 S.W.2d 856 (Tex.Cr.App.1974). See Article 1.15, V.A.C.C.P.

I concur in the result only.

---

1. According to the autopsy report that was admitted in evidence, the victim was not beaten to death with the wrench, but was strangled.